DIRK B. PALOUTZIAN        #173676
dpaloutzian@bakermanock.com
PETER G. FASHING        #195756
pfashing@bakermanock.com
Baker Manock & Jensen, PC
5260 North Palm Avenue, Fourth Floor
Fresno, California 93704
Telephone: 559.432.5400
Facsimile: 559.432.5620

Attorneys for  Plaintiff COOL RUNNINGS INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| COOL RUNNINGS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDRONICO ADAN GONZALEZ, ABIMAEL LUPIAN UTRERA, JOSE OLIVARES LUPIAN and DRC CONTRACTING, LLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

COMES NOW, Plaintiff Cool Runnings International, Inc. files its Complaint against Defendants Andronico Adan Gonzalez, Abimael Lupian Utrera, Jose Olivares Lupian, and DRC Contracting, LLC, and respectfully shows the Court as follows:

## I.    PARTIES AND JURISDICTION

1.    Cool Runnings International, Inc. ("Cool Runnings" or "CRI") is a Georgia corporation.

2.    Cool Runnings' principal place of business is located at 117 Silver Lake Way, Fayetteville, Georgia 30215.

3.      Defendant Andronico Adan Gonzalez ("Defendant Adan") is an individual, residing in Guadalajara, Mexico.

4.      Defendant Adan conducts business in California as a manager/member of Defendant DRC Contracting, LLC ("Defendant DRC Contracting"), 19325 Jesus Maria Road, Mokelumne Hill, California 95245.

5.      Defendant Adan is subject to the personal jurisdiction of this Court.

6.      Defendant Adan may be served with service of process as provided by the Hague Service Commission or as otherwise provided by law.

7.      Defendant Abimael Lupian Utrera ("Defendant Lupian") is an individual, residing in Guadalajara, Mexico.

8.      Defendant Lupian conducts business in California as a manager/member of Defendant DRC Contracting, 19325 Jesus Maria Road, Mokelumne Hill, California 95245.

9.      Defendant Lupian is subject to the personal jurisdiction of this Court.

10.     Defendant Lupian may be served with service of process as provided by the Hague Service Commission or as otherwise provided by law.

11.     Defendant Jose Olivares Lupian ("Defendant Olivares") is an individual, residing in Guadalajara, Mexico.

12.     Defendant Olivares conducts business in California as a contractor or employee of Defendant DRC Contracting, 19325 Jesus Maria Road, Mokelumne Hill, California 95245.

13.     Defendant Olivares is subject to the personal jurisdiction of this Court.

14.     Defendant Olivares may be served with service of process as provided by the Hague Service Commission or as otherwise provided by law.

15.     Defendant DRC Contracting is a limited liability company duly organized under the laws of the State of California and registered with the California Secretary of State.

16.     Defendant DRC Contracting's principal place of business is located within the Fresno Division of this Judicial District at 19325 Jesus Maria Road, Mokelumne Hill, California 95245.

17. Defendant DRC Contracting conducts business in California and has contacts with the state that are continuous, systematic, and purposeful such that it is subject to the personal jurisdiction of this Court.

18. Defendant DRC Contracting may be served with process c/o Danny R. Cline, 19325 Jesus Maria Road, Mokelumne Hill, California 95245.

19. This Court has federal question subject matter jurisdiction over Counts I, II and V of this Complaint pursuant to 28 U.S.C. § 1331 because those claims arise under federal law.

20. This Court has supplemental subject matter jurisdiction over Cool Runnings' state law claims, Counts III and IV, under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

21. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

22. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(3) because the defendants are subject to the personal jurisdiction of this Court.

## II.    STATEMENT OF FACTS

**A.    Cool Runnings is a world class leader in the international refrigeration and cold storage business.**

23. Cool Runnings is a leading provider of commercial and industrial refrigeration and cold storage solutions.

24. Cool Runnings focuses on supplying and servicing customers geographically located in emerging world markets and developing economies.

25. Cool Runnings provides cold storage and refrigeration products, energy management systems, service and maintenance, design, engineering, installation, and construction.

26. Cool Runnings designs and engineers refrigeration plans, and provides and installs commercial refrigeration systems, equipment, and custom designed walk-in coolers and freezers, for example those used in warehouse-style retail stores.

27.     Cool Runnings installs point-of-sale refrigeration cases, meat and produce preparation rooms, and various other overstock storage areas.

28.     Cool Runnings has expended significant resources in developing its proprietary information which is comprised of technical plans; engineering information; designs, compilations, methods and processes; customer, supplier and vendor information; pricing structure and information; materials and construction costs particular to different geographic areas; and Cool Runnings' bid matrix algorithms, in which Cool Runnings has compiled, summarized and synthesized its proprietary information over the course of years.  The foregoing proprietary information is hereinafter collectively referred to as "Trade Secrets."

29.     Cool Runnings' Trade Secrets are valuable confidential business information which are not publicly available or known.

30.     Because Cool Runnings' Trade Secrets and confidential information are an essential part of Cool Runnings' business, Cool Runnings undertakes substantial efforts to ensure that documents and electronically stored information containing Cool Runnings' Trade Secrets and confidential information cannot be easily accessed by the public or by Cool Runnings' competitors.

31.     Among other protective measures, Cool Runnings requires its contractors to enter into agreements requiring them to keep the information shared with them confidential, utilizes electronic barriers to sensitive information, including, but not limited to, password-protected databases, and limits dissemination of information on a need-to-know basis.

**B.      Cool Runnings hired Defendants Adan, Lupian and Olivares as contractors.**

32.     On or about February 22, 2016, Cool Runnings hired Defendant Adan as a contract Refrigeration Journeyman.

33.     In July 2018, Cool Runnings hired Defendant Adan to perform the expanded duties of a contract Technical Services Engineer at an increased rate of pay.

34.     As a contract Technical Services Engineer for Cool Runnings, Defendant Adan was part of a multidisciplinary team that provided information regarding specifications and functions

1  of refrigeration systems, troubleshooted equipment problems, performed design calculations,

2  prepared equipment or material specifications, and performed engineering assignments.

3      35.    In order to perform services as a Technical Services Engineer for Cool Runnings,

4  Defendant Adan obtained knowledge of Cool Runnings' Trade Secrets, confidential information,

5  goodwill, business relationships, business plans and bid information for past and future projects.

6      36.    Having access to Cool Runnings' Trade Secrets and confidential information is

7  necessary for Technical Services Engineers to better serve Cool Runnings' customers and team

8  members.

9      37.    Because Cool Runnings provided Defendant Adan with access to Cool Runnings'

10 Trade Secrets and confidential information, and as a term and condition of his engagement as a

11 contract Technical Services Engineer, Cool Runnings required Defendant Adan to sign the "CRI

12 Nondisclosure Agreement." A true and correct copy of the CRI Nondisclosure Agreement

13 executed by Defendant Adan ("Nondisclosure Agreement") is attached hereto as Exhibit A.

14     38.    The Nondisclosure Agreement provides as follows in the section titled "Non-

15 Disclosure of Confidential Information":

> [Defendant Adan] acknowledges and agrees that, during the course of providing services for the Company, [he] may learn and have access to trade secrets, confidential information, proprietary materials, know-how or knowledge of the Company and its predecessors, subsidiaries, affiliates, employees, officers, directors or agents, which are not generally known to or by the general public and has been developed or acquired by the Company at considerable effort and expense ("Confidential Information"). This Confidential Information includes, without limitation, business, marketing and accounting methods; policies, plans, procedures, financial methods, equipment, designs, estimates, proposals, costs, programs, strategies and techniques; research and development projects and results; software and firmware; trade secrets, know-how, processes and other intellectual property; private personnel information about Company employees and suppliers; any data on or relating to present or prospective customers, including customer lists.

(Exhibit A, Non-Disclosure Agreement, Sec. 2.)

       39.    The Non-Disclosure Agreement also provides that:

> Confidential Information does <u>not</u> include data or information (a) which has been disclosed to the public by the Company or by those acting with written

authorization on its behalf; (b) which has been independently developed and disclosed to the public by third parties; or (c) which has otherwise entered the public domain through lawful means. [Defendant Adan] is obligated and agrees to hold Confidential Information in the strictest confidence at all times.

(Exhibit A, Non-Disclosure Agreement, Sec. 3.)

40. Section 4 of the Non-Disclosure Agreement further provides that:

[Defendant Adan] shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the Company. [Defendant Adan] shall carefully restrict access to Confidential Information to other contractors and third parties as is reasonably required and shall require those persons to sign nondisclosure restrictions at least as protective as those in this Agreement. [Defendant Adan] shall not, without prior written approval from Company, use for [Defendant Adan's] own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of Company, any Confidential Information.

(Exhibit A, Non-Disclosure Agreement, Sec. 4.)

41. The Non-Disclosure Agreement further sets forth Defendant Adan's agreement "not to remove, copy, or transfer Confidential Information out of the Company through digital or electronic means, such as by sending electronic mail, digital downloading, or transferring to a Cloud storage system, except as may be required for the performance of their services for the Company." (Exhibit A, Non-Disclosure Agreement, Sec. 4.)

42. Cool Runnings also contracted with other individuals to provide Electrician and Construction services on Cool Runnings' projects.

43. On or about August 24, 2016, Cool Runnings hired Defendant Lupian to provide contract Electrician services on Cool Runnings' projects.

44. Defendant Lupian was subsequently given greater responsibility and duties by Cool Runnings as a Master Electrician and Foreman.

45. On or about August 26, 2016, Cool Runnings hired Defendant Olivares to provide contract Construction services on Cool Runnings' projects as a Carpentry Journeyman.

46. As is Cool Runnings' practice for its contractors, Defendants Adan, Lupian and Olivares periodically signed contractor letter agreements which outlined the terms of their engagements with Cool Runnings.

47.     Among other things, the contractor letter agreements stated as follows: "As a contractor with CRI, you agree not to disclose, CRI's Confidential Information, Proprietary Information, or Technical Information, orally, in writing, by inspection or in any other manner whatsoever for the benefit of any person or entity other than CRI."

48.     On or about September 12, 2016, Cool Runnings hired Domingo Valle Lino to provide contract Electrician services on Cool Runnings' projects.

49.     On or about May 28, 2019, Cool Runnings hired Gregorio Gomez to provide contract Electrician services on Cool Runnings' projects.

50.     On or about August 25, 2019, Cool Runnings hired Jose Refugio Sanchez Hernandez to provide contract Electrician services on Cool Runnings' projects.

51.     Cool Runnings utilizes Microsoft SharePoint as its document management platform.

52.     Cool Runnings uses the SharePoint platform as a centralized secure space where it stores its documents, and where authorized users can access information, share, and edit documents.

53.     In order to provide authorized users access to Cool Runnings' Trade Secrets and confidential information, Cool Runnings houses some of its Trade Secrets and confidential information on a drive referred to as the "CRI Share Drive."

54.     Among other things, Cool Runnings' bid matrix algorithms, including the Cool Runnings Project Materials Order Form, past bid proposals, in-process future bid proposals, customer information, project specifications, documents containing pricing, materials and construction cost information, design plans, technical plans, and engineering information are stored on the CRI Share Drive.

55.     Access to SharePoint and the CRI Share Drive is restricted to employees and contractors of Cool Runnings on a need-to-know basis, based on role, duties, and assignments.

56.     Defendant Adan knew that access to Cool Runnings' SharePoint system and the CRI Share Drive was restricted to authorized employees and contractors of Cool Runnings who were provided a username and password.

57.     To facilitate Defendant Adan's access to the CRI Share Drive, Cool Runnings provided Defendant Adan with a company-owned Microsoft Surface laptop (the "CRI Surface laptop").

**C.     Cool Runnings' contractors leave to work with Defendant DRC Contracting; Cool Runnings' computers are accessed, without authorization, and its Trade Secrets are copied.**

58.     By email on December 23, 2020 at 5:42 am, Defendant Adan resigned "effective today."

59.     By email on December 23, 2020 at 10:01am, Defendant Lupian also resigned.

60.     Defendants Adan and Lupian left Cool Runnings and began working with Defendant DRC Contracting.

61.     Cool Runnings is informed and believes, and the basis of such information and belief alleges that at some point prior to December 23, 2020, Defendant Adan began to plan that he would cease providing services to Cool Runnings and he began efforts to misappropriate Cool Runnings' Trade Secrets and confidential information by accessing and copying onto external storage devices computer files which contained Cool Runnings' completed project drawings, schematics, store layouts, and other confidential information that was not needed for his work for Cool Runnings.

62.     Despite having terminated his position as a contract Technical Services Engineer for Cool Runnings on December 23, 2020, Defendant Adan did not immediately return the CRI Surface laptop to Cool Runnings.

63.     On or about December 30, 2020, Cool Runnings provided Defendant Adan instructions for returning the CRI Surface laptop and asked for him to provide a tracking number when he had shipped the laptop.

64.     Defendant Adan initially indicated that he would return Cool Runnings' laptop.

65.     After Cool Runnings did not receive a tracking number from Defendant Adan, Cool Runnings reached out to Defendant Adan again on or about January 5, 2021.

66.     Defendant Adan indicated that he was out of town until January 8, 2021, and that he did not have Cool Runnings' laptop with him.

67.    On January 12, 2021, Defendant Adan finally permitted Cool Runnings' contractor in Guadalajara, Elonay Guiterrez, to pick up the CRI Surface laptop.

68.    In the days after Defendant Adan terminated his relationship with Cool Runnings on December 23, 2020, and while Defendant Adan retained physical possession of the CRI Surface laptop, multiple external storage devices were connected to the computer and large volumes of Cool Runnings' files were copied onto those devices.

69.    Among the large volume of files that were copied onto external storage devices, were Cool Runnings' Project Materials Order Form, design guides, and project specific information relating to Cool Runnings' estimates on projects for which it had already submitted quotes.

70.    For example, on or about January 9, 2021, before Defendant Adan returned the CRI Surface laptop, files containing Cool Runnings' confidential estimate for installing and constructing a produce center in Panama (David Produce Center_Quote_111684_15Aug2018.pdf and PDC Panama David Fase 2 opcion1 julio 8-20.pdf) and the proposed construction schedule for that project (Panama PDC 6226 – Stage 2 Construction – June 2020.pdf) were copied from the CRI Surface laptop onto external storage devices.

71.    In addition, Cool Runnings' Project Materials Order Form (CRI Order Form 2020 Blue.xlsx) was also copied from the CRI Surface laptop onto an external storage device on or about January 9, 2021.

72.    Cool Runnings' Project Materials Order Form is its master project materials list that has been developed through years of experience designing, engineering, constructing, and installing cool storage areas.

73.    Cool Runnings uses a color-coded system to ensure that its employees and contractors who are working on a particular project are using the same, most recent, iteration of the information.

74.    Cool Runnings' Project Materials Order Form, an internal company document which is not shared with customers, is a compilation of information pertaining to the material

items that Cool Runnings has chosen to use for its international projects, down to each piece of wire, piping, clamp, and insulation.

75.    With respect to each material item, Cool Runnings' Project Materials Order Form includes detailed pricing information, Cool Runnings' preferred vendor, and shipping, customs and tariff information such as harmonization codes, dimensions, weight, manufacturer and country of origin, relating to each item.

76.    Cool Runnings has expended significant time and resources to create and develop its Project Materials Order Form.

77.    Cool Runnings' Project Materials Order Form, which is not shared with customers, is a key component of Cool Runnings' bid matrix algorithms, its bid preparation process and in the completion of Cool Runnings' projects.

78.    Having its Project Materials Order Form is a significant part of the recipe that provides Cool Runnings with a competitive advantage in the industry.

79.    Following Defendant Adan's and Defendant Lupian's departures on December 23, 2020, several other contractors also stopped working with Cool Runnings.

80.    On December 24, 2020, at approximately 5:00 pm, Domingo Valle Lino resigned.

81.    On December 24, 2020, at approximately 8:04pm, Defendant Olivares resigned.

82.    On December 30, 2020, Jose Refugio Sanchez Hernandez resigned.

83.    On January 4, 2021, Gregorio Gomez resigned.

84.    On information and belief, Defendants Adan, Lupian and Olivares solicited, and continue to solicit, Cool Runnings' contractors to stop working for Cool Runnings and to work for Defendant DRC Contracting.

**D.    Defendant DRC Contracting launches its competing business.**

85.    On January 1, 2021, Defendant DRC Contracting registered its formation as a limited liability company with the California Secretary of State. A true and correct copy of Defendant DRC Contracting's Articles of Organization is attached hereto as Exhibit B.

86.    On March 16, 2021, Defendant DRC Contracting filed its Statement of Information with the California Secretary of State. A true and correct copy of Defendant DRC Contracting's Statement of Information is attached hereto as Exhibit C.

87.    Defendant DRC Contracting's managers/members are D.R. Cline Enterprises, Inc., Defendant Adan, and Defendant Lupian. (Exhibits B & C)

88.    D.R. Cline Enterprises, Inc. is a California corporation, owned, at least in part, and operated by Danny R. Cline.

89.    Danny R. Cline is a former owner of an international refrigeration company who seeks to re-enter the industry after approximately 7 years absence.

90.    61.    Cool Runnings is informed and believes, and the basis of such information and belief alleges that due to Danny R. Cline's past experience working in the international refrigeration industry, he would have known that Cool Runnings' proprietary information, including technical plans, engineering information, designs, compilations, methods and processes, customer, supplier and vendor information, pricing structure and information, materials and construction costs particular to different geographic areas, and Cool Runnings' bid matrix algorithms, including Cool Runnings' Project Materials Order Form, constituted Cool Runnings' Trade Secrets, that Cool Runnings' Trade Secrets are an essential part of Cool Runnings' business, and that Cool Runnings undertakes substantial efforts to ensure such information remains confidential.

91.    PriceSmart, Inc., headquartered in San Diego, California, owns and operates U.S.-style shopping warehouse clubs in Latin America and the Caribbean.

92.    PriceSmart, Inc. is a substantial customer of Cool Runnings.

93.    Since 2015, Cool Runnings has completed over 120 projects for PriceSmart.

94.    Cool Runnings has been PriceSmart's refrigeration contractor of choice for new PriceSmart club stores and major remodel projects for several years.

95.    On or about January 25, 2021, Cool Runnings submitted a bid proposal to PriceSmart, Inc., in San Diego, California, for the installation, and construction of refrigerated and

1   cool storage areas for a new PriceSmart store in Bucaramanga, Columbia (the "Bucaramanga
2   project").

3       96.    Within only a few weeks of its formation, Defendant DRC Contracting also
4   submitted a bid for the Bucaramanga project.

5       97.    Defendant DRC Contracting was chosen for the Bucaramanga project.

6       98.    On or about March 8, 2021, Cool Runnings submitted a proposal to PriceSmart,
7   Inc. in San Diego, California for the design, installation, and construction of a produce distribution
8   center at an existing PriceSmart facility in La Vega, Dominican Republic (the "DR project").

9       99.    Defendant DRC Contracting also submitted a bid for the DR project.

10      100.    Defendant DRC Contracting was chosen for the DR project.

11      101.    Cool Runnings' combined bids for the Bucaramanga and DR projects totaled over a
12  million dollars.

13  **E.    DRC copy of critical Cool Runnings' document emailed to Cool Runnings email**
14        **address.**

15      102.    On or about April 8, 2021, Cool Runnings received an email via a Cool Runnings
16  email address that was previously assigned to Defendant Adan while he was a contractor for Cool
17  Runnings – aadan@coolrunningsint.com ("April 8 email").

18      103.    The April 8 email was sent from Defendant Olivares to Defendant Adan at
19  aadan@coolrunningsint.com and Defendant Lupian at his DRC Contracting email address –
20  alupian@drccont.com.

21      104.    A single file was attached to the April 8 email – "Copia de DRC 2021 Master Parts
22  Order for La Vega PDC(969).xlsx."

23      105.    The file attached to the April 8 email is, in form and substance, essentially a copy
24  of Cool Runnings' Project Materials Order Form that was copied by Defendant Adan onto an
25  external storage device from the CRI Surface laptop.

26      106.    It is apparent, on the face of the document attached to the April 8 email, that
27  Defendants have blatantly used, and continue to use, a copy of Cool Runnings' confidential and
28  proprietary Project Materials Order Form in their new competing business.

107. For example, while most references to "Cool Runnings" or "CRI" have been removed and replaced with "DRC Contracting" or "DRC" in the copied document, references to "CRI," "CRI Built," and "CRI Warehouse" remain as preferred vendors or manufacturers in the copied document.

108. In addition, the instructions for completing the workbook, set out in the tab labeled "Help Sheet," are the same, including identical detailed examples of what materials should be used in a particular situation.

109. The document also contains a reference to the customer as "Pricesmart Bucaramanga."

110. Of most importance, the substantive project materials information contained in the copied document, with few and minor changes or additions, is a copy of Cool Runnings' Project Materials Order Form.

111. Defendants have quickly launched a direct competitor of Cool Runnings by misappropriating Cool Runnings Trade Secrets, which Cool Runnings had developed through years of effort and expense.

112. Defendants' actions violate state and federal law.

**COUNT I -**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(Against Defendant Andronico Adan Gonzalez)**

113. Cool Runnings reasserts and realleges each and every allegation contained in paragraphs 1 through 112 of this Complaint with the same force and effect as if fully set forth herein.

114. Defendant Adan intentionally accessed, without authorization, a protected computer or computer network owned by Cool Runnings, through which Cool Runnings conducts interstate and foreign commerce and communications and obtained Cool Runnings' Trade Secrets and confidential information.

115. Cool Runnings' Trade Secrets and confidential information that Defendant Adan obtained as a result of his access, without authorization, have a value greater than $5,000 per year.

13
COMPLAINT

1    116.    Defendant Adan's intentional access, without authorization, of a protected

2    computer or computer network owned by Cool Runnings, caused and will continue to cause

3    damage, loss, and other injury to Cool Runnings exceeding $5,000 per year.

4    117.    Defendant Adan's conduct constitutes violation of the Computer Fraud and Abuse

5    Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4).

6    118.    As a result, Cool Runnings is entitled to compensatory damages, injunctive relief,

7    and other equitable relief pursuant to 18 U.S.C. §1030(g).

8    **COUNT II –**
**CONSPIRACY TO VIOLATE COMPUTER FRAUD AND ABUSE ACT**

9    **(Against Defendant DRC Contracting, LLC)**

10

11    119.    Cool Runnings reasserts and realleges each and every allegation contained in

12    paragraphs 1 through 118 of this Complaint with the same force and effect as if fully set forth

13    herein.

14    120.    Defendant Adan intentionally accessed, without authorization, a protected

15    computer or computer network owned by Cool Runnings, through which Cool Runnings conducts

16    interstate and foreign commerce and communications and obtained Cool Runnings' Trade Secrets

17    and confidential information for Defendant DRC Contracting's use and benefit.

18    121.    Defendant Adan is a manager/member of Defendant DRC Contracting.

19    122.    Cool Runnings' Trade Secrets and confidential information that Defendant DRC

20    Contracting obtained as a result of the access, without authorization, have a value greater than

21    $5,000 per year.

22    123.    The intentional access, without authorization, of a protected computer or computer

23    network owned by Cool Runnings, caused and will continue to cause damage, loss and other

24    injury to Cool Runnings exceeding $5,000 per year.

25    124.    Defendant DRC Contracting conspired to violate the Computer Fraud and Abuse

26    Act ("CFAA"), 18 U.S.C. § 1030(b).

27    125.    Cool Runnings is entitled to compensatory damages, injunctive relief, and other

28    equitable relief pursuant to 18 U.S.C. §1030(g).

## COUNT III –
## BREACH OF CONTRACT
**(Against Defendant Andronico Adan Gonzalez)**

126.    Cool Runnings reasserts and realleges each and every allegation contained in paragraphs 1 through 125 of this Complaint with the same force and effect as if fully set forth herein.

127.    Defendant Adan signed the Nondisclosure Agreement on or about July 16, 2018.

128.    The Nondisclosure Agreement is valid and enforceable.

129.    Defendant Adan breached the Nondisclosure Agreement in at least four ways.

130.    First, Defendant Adan did not hold and maintain Cool Runnings' Confidential Information, as defined in the Nondisclosure Agreement, in strictest confidence for the sole and exclusive benefit of Cool Runnings.

131.    Second, Defendant Adan breached the Nondisclosure Agreement by using Cool Runnings' Confidential Information for his own benefit or by permitting others to use Cool Runnings' Confidential Information for their benefit or to the detriment of Cool Runnings.

132.    Third, Defendant Adan breached the Nondisclosure Agreement by removing, copying, or transferring Cool Runnings' Confidential Information out of the Company through digital or electronic means.

133.    Cool Runnings has been damaged as a result in an amount to be proven at trial.

## COUNT IV –
## VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT
**(Against Defendants Andronico Adan Gonzalez, Abimael Lupian Utrera, Jose Olivares Lupian, and DRC Contracting, LLC)**

134.    Cool Runnings reasserts and realleges each and every allegation contained in paragraphs 1 through 133 of this Complaint with the same force and effect as if fully set forth herein.

135.    As set forth above, Cool Runnings has Trade Secrets that derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

136. Cool Runnings' Trade Secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

137. Defendant Adan acquired Cool Runnings' Trade Secrets by improper means.

138. Defendant Adan misappropriated Cool Runnings' Trade Secrets by knowingly acquiring the Trade Secrets by improper means, in violation of the California Uniform Trade Secrets Act ("CUTSA), Cal. Civ. Code § 3426.1(b)(1).

139. Defendant Adan further misappropriated Cool Runnings' Trade Secrets by disclosing and/or using the Trade Secrets, without Cool Runnings' consent, in violation of CUTSA, Cal. Civ. Code § 3426.1(b)(2)(A).

140. Defendants Lupian, Olivares and DRC Contracting misappropriated Cool Runnings' Trade Secrets by using the Trade Secrets, without Cool Runnings' consent, while they knew or had reason to know that their knowledge of the Trade Secrets was derived from or through Defendant Adan, who had utilized improper means to acquire the Trade Secrets and/or who owed a duty to Cool Runnings to maintain the secrecy of Cool Runnings' Trade Secrets or limit their use, in violation of CUTSA, Cal. Civ. Code § 3426.1(b)(2)(B).

141. Cool Runnings has suffered, and will continue to suffer, damage, including loss of business, business advantage and goodwill, due to defendants' misappropriation of Cool Runnings' Trade Secrets.

142. The actions of Defendants in misappropriating Cool Runnings' Trade Secrets will cause irreparable harm and damage to Cool Runnings unless Defendants are enjoined from using Cool Runnings' Trade Secrets to their commercial advantage. CUTSA, Cal. Civ. Code § 3426.2.

143. Cool Runnings is entitled to damages caused by Defendants' misappropriation, including for unjust enrichment, pursuant to CUTSA, Cal. Civ. Code § 3426.3.

144. The actions of Defendants in misappropriating Cool Runnings' Trade Secrets were willful and malicious, thus Cool Runnings should be awarded exemplary damages and reasonable attorney's fees and costs, pursuant to CUTSA, Cal. Civ. Code §§ 3426.3 & 3426.4.

**COUNT V –**
**VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT**
**(Against Defendants Andronico Adan Gonzalez, Abimael Lupian Utrera,**
**Jose Olivares Lupian, and DRC Contracting, LLC)**

145.    Cool Runnings reasserts and realleges each and every allegation contained in paragraphs 1 through 144 of this Complaint with the same force and effect as if fully set forth herein.

146.    As set forth above, Cool Runnings has Trade Secrets that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

147.    Cool Runnings' Trade Secrets are the subject of reasonable measures under the circumstances to maintain their secrecy.

148.    Cool Runnings' Trade Secrets are related to products or services used in, or intended for use in, interstate or foreign commerce.

149.    Defendant Adan acquired Cool Runnings' Trade Secrets by improper means.

150.    Defendant Adan misappropriated Cool Runnings' Trade Secrets by knowingly acquiring the Trade Secrets by improper means, in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(5)(A).

151.    Defendant Adan further misappropriated Cool Runnings' Trade Secrets by disclosing and/or using the Trade Secrets, without Cool Runnings' consent, in violation of the DTSA, 18 U.S.C. § 1839(5)(B)(i).

152.    Defendants Lupian, Olivares and DRC Contracting misappropriated Cool Runnings' Trade Secrets by using the Trade Secrets, without Cool Runnings' consent, while Defendants knew or had reason to know that their knowledge of the Trade Secrets was derived from or through Defendant Adan, who had used improper means to acquire the Trade Secrets and/or who owed a duty to Cool Runnings to maintain the secrecy of Cool Runnings' Trade Secrets or limit their use, in violation of the DTSA, 18 U.S.C. § 1839(5)(B)(ii).

153. Cool Runnings has suffered, and will continue to suffer, damage, including loss of business, business advantage and goodwill, due to Defendants' misappropriation of Cool Runnings' Trade Secrets.

154. The actions of Defendants in misappropriating Cool Runnings' Trade Secrets will cause irreparable harm and damage to Cool Runnings unless Defendants are enjoined from using Cool Runnings' Trade Secrets to their commercial advantage. DTSA, 18 U.S.C. § 1836(b)(3)(A).

155. Cool Runnings is entitled to an award for damages caused by Defendants' misappropriation, including for unjust enrichment, pursuant to DTSA, 18 U.S.C. § 1836(b)(3)(B).

156. The actions of Defendants in misappropriating Cool Runnings' Trade Secrets were willful and malicious, thus Cool Runnings should be awarded exemplary damages and reasonable attorney's fees pursuant to DTSA, 18 U.S.C. §§ 1836(b)(3)(C) & (D).

**COUNT VI –**
**REQUEST FOR INTERLOCUTORY AND PERMANENT INJUNCTION**
**(Against Defendants Andronico Adan Gonzalez, Abimael Lupian Utrera,**
**Jose Olivares Lupian, and DRC Contracting, LLC)**

157. Cool Runnings reasserts and realleges each and every allegation contained in paragraphs 1 through 156 of this Complaint with the same force and effect as if fully set forth herein.

158. The conduct of Defendants in their misappropriation of the trade secrets of Cool Runnings has and will result in irreparable harm to Cool Runnings.

159. The conduct of Defendant Adan in breach of the Nondisclosure Agreement has and will result in irreparable harm to Cool Runnings.

160. Cool Runnings prays that this Court will issue an Interlocutory and Permanent Injunction against Defendants:

A. From allowing Defendants to, directly or indirectly, obtain, retain, use, transmit, disseminate, or disclose, or attempting to obtain, retain, use, transmit, disseminate, or disclose, any trade secret and/or confidential information of Cool Runnings;

B. Requiring Defendants to disgorge themselves of any trade secrets and/or confidential information of Cool Runnings, and any work product of Defendants derived from Cool Runnings' trade secrets and/or confidential information

C. Enjoining and restraining Defendants from using any information obtained from Cool Runnings computer system, including information obtained from the CRI Surface laptop;

D. Enjoining and restraining Defendants from using any trade secret and/or confidential information of Cool Runnings to solicit business from any Cool Runnings customer, including PriceSmart;

E. Enjoining and restraining Defendants from accessing, tampering with, purging, deleting or destroying any information, whether in hard copy or contained in computing equipment in their possession, custody or control;

F. Requiring Defendants, within twenty-four (24) hours after service upon them of the Court's Order, return all Cool Runnings property and information, without first altering, destroying or otherwise disposing of any such property and information, including but not limited to all electronically-stored information and information obtained from Cool Runnings computer system and/or obtained from the CRI Surface laptop;

G. Requiring Defendants to, immediately upon presentation of the Court's Order, provide access to and permit a forensic copy be made by Cool Runnings' chosen ESI vendor of all computers (including, but not limited to, Android devices, iPhones and iPads), Personal Digital Assistants, mobile email or smartphone devices, and storage media (including but not limited to flash drives, USB drives, external hard drives, DDs, CDs, etc.) used by them to conduct business or on which any information belonging to, related to or referring to Cool Runnings is stored, to verify the return, removal or destruction of all Cool Runnings trade secrets and/or confidential information through a good-faith, mutually agreed upon, third party inspection protocol that will also protect their personal information, if any; to the extent that Cool Runnings' chosen ESI

vendor determines that any computer, storage media or other device covered by the above description cannot be forensically copied on site, Cool Runnings' chosen ESI vendor shall be permitted to take such devices for copy at Cool Runnings' chosen ESI vendor's site and to be returned to Defendant(s) within 72 hours;

H. Requiring Defendants to, immediately upon presentation of the Court's Order, confidentially provide Cool Runnings' chosen ESI vendor with the user name and password of any personal email account and any cloud-based storage platform for ESI used by them and permit access to and a forensic copy to be made of the contents of any such email account to verify the return, removal or destruction of all Cool Runnings material or information through a good-faith, mutually agreed upon, third party inspection protocol that also will protect Cool Runnings' information, if any; and

I. Enjoining Defendants from acting in concert with others to accomplish what is otherwise prohibited by this Court's Order.

161.    Cool Runnings shows that there is a substantial likelihood that it will prevail on the merits of its causes of action against Defendants, that the harm to them if an injunction is granted is less than the harm that will occur to Cool Runnings if the injunction is not granted, that Cool Runnings does not have an adequate remedy of law, and that irreparable harm and injury will occur to Cool Runnings if Defendants are permitted to interfere with Cool Runnings' trade secrets and confidential information as set forth herein.

WHEREFORE, Cool Runnings respectfully request that this Court grant the following relief:

A.    A jury trial on all issues so triable;

B.    Injunctive relief as follows:

1) From allowing Defendants to, directly or indirectly, obtain, retain, use, transmit, disseminate, or disclose, or attempting to obtain, retain, use, transmit, disseminate, or disclose, any trade secret and/or confidential information of Cool Runnings;

2) Requiring Defendants to disgorge themselves of any trade secrets and/or confidential information of Cool Runnings, and any work product of Defendants derived from Cool Runnings' trade secrets and/or confidential information;

3) Enjoining and restraining Defendants from using any information obtained from Cool Runnings computer system, including information obtained from the CRI Surface laptop;

4) Enjoining and restraining Defendants from using any trade secret and/or confidential information of Cool Runnings to solicit business from any Cool Runnings customer, including PriceSmart;

5) Enjoining and restraining Defendants from accessing, tampering with, purging, deleting or destroying any information, whether in hard copy or contained in computing equipment in their possession, custody or control;

6) Requiring Defendants, within twenty-four (24) hours after service upon them of the Court's Order, return all Cool Runnings property and information, without first altering, destroying or otherwise disposing of any such property and information, including but not limited to all electronically-stored information and information obtained from Cool Runnings computer system and/or obtained from the CRI Surface laptop;

7) Requiring Defendants to, immediately upon presentation of the Court's Order, provide access to and permit a forensic copy be made by Cool Runnings' chosen ESI vendor of all computers (including, but not limited to, Android devices, iPhones and iPads), Personal Digital Assistants, mobile email or smartphone devices, and storage media (including but not limited to flash drives, USB drives, external hard drives, DDs, CDs, etc.) used by them to conduct business or on which any information belonging to, related to or referring to Cool Runnings is stored, to verify the return, removal or destruction of all Cool Runnings trade secrets and/or confidential information through a good-faith, mutually agreed upon, third party inspection protocol that will also protect their personal information, if any; to the

1  extent that Cool Runnings' chosen ESI vendor determines that any computer,

2  storage media or other device covered by the above description cannot be

3  forensically copied on site, Cool Runnings' chosen ESI vendor shall be permitted

4  to take such devices for copy at Cool Runnings' chosen ESI vendor's site and to be

5  returned to Defendant(s) within 72 hours;

6  8) Requiring Defendants to, immediately upon presentation of the

7  Court's Order, confidentially provide Cool Runnings' chosen ESI vendor with the

8  user name and password of any personal email account and any cloud-based

9  storage platform for ESI used by them and permit access to and a forensic copy to

10  be made of the contents of any such email account to verify the return, removal or

11  destruction of all Cool Runnings material or information through a good-faith,

12  mutually agreed upon, third party inspection protocol that also will protect Cool

13  Runnings' information, if any; and

14  9) Enjoining Defendants from acting in concert with others to accomplish what is

15  otherwise prohibited by this Court's Order.

16  C.  A judgment against Defendants in an amount to be determined at trial;

17  D.  Exemplary damages in an amount to be determined at trial;

18  E.  Expenses of litigation, including reasonable attorney's fees and costs;

19  F.  Such further relief that the Court deems just, equitable, and appropriate under the

20  circumstances.

21

22  DATED: June 18, 2021          BAKER MANOCK & JENSEN, PC

23

24

25  By: _____
    Dirk B. Paloutzian

26  Peter G. Fashing
    Attorney for Plaintiff, COOL RUNNINGS

27  INTERNATIONAL, INC.

28

EXHIBIT "A"



Cool Runnings International, Inc.

## CRI NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (the "Agreement") is entered into by and between Cool Runnings International, Inc. (CRI) ("Company") with its principal place of business in Peachtree City, Georgia, and _____Andronico Adan Gonzalez_____,
who resides at _____Guadalajara Jalisco Mexico_____("Receiving Party") for preventing the unauthorized disclosure of Confidential Information as defined below. The parties agree to enter into a confidential relationship with respect to the disclosure of certain proprietary and confidential information ("Confidential Information").

**WHEREAS,** as a material condition of Contracted Services by Company, the Receiving Party has agreed to enter into this Agreement, which sets forth the parties' understanding concerning certain specific terms for contracted services, including restrictive covenants that will be in place during the period of the relationship and following the termination of the relationship for any reason.

**NOW, THEREFORE**, in consideration of the facts, mutual promises, and covenants contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1.    Background: Due to specialized nature of confidential and trade secret information about the Company to which the Receiving Party may have access, as well as because the Company believes that the Receiving Party possesses select or specialized skills, learning, abilities, customer contacts or customer information or will obtain such skills, learning, abilities, contacts or information by virtue of providing services with the Company. The Receiving Party is someone who, by reason of the Company's investment of time, training, money, trust, exposure to the public, exposure to customers, vendors or other business relationships, (a) may gain a high level of influence or credibility with the Company's customers, vendors or other business relationships, and/or (b) may be intimately involved in the planning for or direction of the business of the Company or a defined unit thereof.

2.    Non-Disclosure of Confidential Information.  The Receiving Party acknowledges and agrees that, during the course of providing services for the Company, they may learn and have access to trade secrets, confidential information, proprietary materials, know-how or knowledge of the Company and its predecessors, subsidiaries, affiliates, employees, officers, directors or agents, which are not generally known to or by the general public and has been developed or acquired by the Company at considerable effort and expense ("Confidential Information").  This Confidential Information includes, without limitation, business, marketing and accounting methods; policies, plans, procedures, financial methods, equipment, designs, estimates, proposals, costs, programs, strategies and techniques; research and development projects and results; software and firmware;  trade secrets, know-how, processes and other intellectual property; private personnel information about Company employees and suppliers; any data on or relating to present or prospective customers, including customer lists.

3.    Exclusions from Confidential Information:  Confidential Information does not include data or information (a) which has been disclosed to the public by the Company or by those acting with written authorization on its behalf; (b) which has been independently developed and disclosed to the public by third parties; or (c) which has otherwise entered the public domain through lawful means. The Receiving Party's is obligated and agrees to hold Confidential Information in the strictest confidence at all times.



4.    Confidential Information Obligations of Receiving Party: Receiving Party shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the Company. Receiving Party shall carefully restrict access to Confidential Information to other contractors and third parties as is reasonably required and shall require those persons to sign nondisclosure restrictions at least as protective as those in this Agreement. Receiving Party shall not, without prior written approval from Company, use for Receiving Party's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of Company, any Confidential Information. Receiving Party shall return to Company any and all records, notes, and other written, printed, or tangible materials in its possession, including electronic media, pertaining to Confidential Information immediately if the Company requests it in writing. The Receiving Party agrees not to remove, copy, or transfer Confidential Information out of the Company through digital or electronic means, such as by sending electronic mail, digital downloading, or transferring to a Cloud storage system, except as may be required for the performance of their services for the Company. Regardless if the relationship is terminated by the Receiving Party or the Company, all confidential information shall be provided to the Company at written request with no copies, electronically or otherwise to be possessed by the Receiving Party.

5.    Non-Competition: During time contracted with CRI, and for a period of two (2) years after the termination of such relationship ("Restricted Period"), whether the relationship was terminated by the Company or by Receiving Party, the Receiving Party shall not, directly or indirectly, whether as an employee, consultant, independent contractor, owner, manager, principal, director, partner, joint venture or otherwise, engage or be financially interested in any activities for the benefit of a business which competes, or is planning to compete, directly or indirectly, with any aspect of the CRI's Business, including but not limited to its know-how. The Receiving Party agrees not to directly or indirectly engage in any business (e.g., own, manage, operate, control, be employed by, provide debt or equity financing for, make a loan to, invest in, act as a guarantor or surety for, participate in a joint venture with, have a proprietary interest of any kind in, or serve as consultant to any person, or entity engaged in any business) which competes with the Company within the United States or within any region within any other country wherein the Company has provided Cold Storage Solution services within the past two (2) years.

6.    Non-Disparagement and Professional Conduct. During the time working with the Company, and at all times thereafter, the Receiving Party shall not, directly or indirectly, make or cause to be made any public statements or communications, whether written or oral, that could reasonably be expected to be harmful to or reflect negatively on the business or reputation of the Company or that are otherwise disparaging of or could be detrimental to the Company or its present and former owners, employees, officers, directors, shareholders, agents, contractors or assigns.

7.    Non-solicitation: During the time working with the Company and following the last date of service with the Company, the Receiving Party agrees not to contact or solicit any Company customers (a) for whom the Receiving Party provided services while working with the Company, (b) who the Receiving Party became aware of (identity, contact persons, contact information, service preferences, needs, schedules, etc.) while working with the Company. The Receiving Party shall not, directly, or indirectly, solicit any individual employed or contracted by the Company at any time.

8.    Time Periods: The provisions of this Agreement shall survive the termination of this Agreement and the Receiving Party's duty to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret or until the Company sends the Receiving Party written notice releasing the Receiving Party from this Agreement, whichever occurs first.

9.    Relationships: Nothing contained in this Agreement shall be deemed to constitute either party a partner, joint venture, or employee of the other party for any purpose.



10.   Severability: If any part of this Agreement shall be held or declared to be void, invalid or illegal for any reason by any court of competent jurisdiction, such provision shall be ineffective but shall not in any way invalidate or affect any other clause, paragraph, section or part of this Agreement. In such circumstance, this Agreement shall be enforced to the greatest extent possible to reflect the intent of the parties at the time they entered into this Agreement.

11.   Integration: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement may not be amended except in a writing duly executed and signed by both parties.

12.   Waiver: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights. The Company's failure to insist on strict compliance with the terms, covenants or conditions of this Agreement shall not be deemed a waiver of such term, covenant, or condition with respect to the Receiving Party nor with respect to any other person bound to similar obligations.

IN WITNESS WHEREOF, this Agreement and each party's obligations shall be binding on the representatives, assigns and successors of such party. Each party has signed this Agreement through its authorized representative. Each of the parties hereto has duly executed this Agreement with the effective Date being on the date set forth below.

_____    _____
Signature – Receiving Party                                           Date
Andronico Adan Gonzalez
_____
Printed Name – Receiving Party

07/16/2018

_____    _____
Signature – Cool Runnings International, Inc.                         Date
Carol Winten
_____
Printed Name – Cool Runnings International, Inc.

08/01/2018





EXHIBIT "B"

**202102810678**

| | | LLC-1 |
|---|---|---|

**Secretary of State**
**Articles of Organization**
Limited Liability Company (LLC)

**FILED**
Secretary of State
State of California

**JAN 0 1 2021**

This Space For Office Use Only

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee  –  $70.00**

**Copy Fees  –**  First page $1.00; each attachment page $0.50;
Certification Fee - $5.00

*Note:* LLCs may have to pay minimum $800 tax to the California Franchise Tax Board
each year.  For more information, go to https://www.ftb.ca.gov.

**1.    Limited Liability Company Name** (See Instructions – Must contain an LLC identifier such as LLC or L.L.C. "LLC" will be added, if not included.)

**DRC CONTRACTING, LLC**

**2.  Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 42 Main Street | Valley Springs | CA | 95252 |
| b. Initial Mailing Address of LLC, if different than Item 2a | City (no abbreviations) | State | Zip Code |
| | | | |

**3.  Service of Process** (Must provide either Individual OR Corporation.)

INDIVIDUAL – Complete Items 3a and 3b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| Danny | R. | Cline | | |
| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | | State | Zip Code |
| 42 Main Street | Valley Springs | | CA | 95252 |

CORPORATION – Complete Item 3c.  Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b |
|---|
| |

**4.  Management** (Select only one box)

The LLC will be managed by:

☐ One Manager        ☐ More than One Manager        ☑ All LLC Member(s)

**5.  Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company
may be organized under the California Revised Uniform Limited Liability Company Act.

**6.  By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by
California law to sign.**

Additional signatures set forth on attached pages, if any, are incorporated herein by reference and made part of this Form LLC-1. (All attachments
should be 8 ½ x 11, one-sided, legible and clearly marked as an attachment to this Form LLC-1.)

Organizer sign here

**DANNY R. CLINE**

Print your name here

LLC-1 (REV 11/2020)

2020 California Secretary of State
bizfile.sos.ca.gov

**ATTACHMENT TO**
**ARTICLES OF ORGANIZATION**
**FOR**
**DRC CONTRACTING, LLC**
**A California Limited Liability Company**

**Requested future filing date:**　　　January 1, 2021

2021 02 8 1 0 6 7 8

# EXHIBIT "C"

## Secretary of State
## Statement of Information
(Limited Liability Company)

**LLC-12**

21-B46930

# FILED

In the office of the Secretary of State
of the State of California

**MAR 16, 2021**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

| 1. Limited Liability Company Name (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.) |
|---|
| DRC CONTRACTING, LLC |

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 202102810678 | CALIFORNIA |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |
| b. Mailing Address of LLC, **if different than item 4a** | City (no abbreviations) | State | Zip Code |
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Entity Name - Do not complete Item 5a |
|---|
| D.R. Cline Enterprises, Inc. |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Danny | R. | Cline | |
| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Offshore construction |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| b. Address | City (no abbreviations) | State | Zip Code |
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 03/16/2021 | Danny  R. Cline | Member | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

**Attachment to Statement of Information** (Limited Liability Company)

**LLC-12A Attachment**

21-B46930

**A.  Limited Liability Company Name**

DRC CONTRACTING, LLC

This Space For Office Use Only

| **B.  12-Digit Secretary of State File Number** | **C.  State or Place of Organization** (only if formed outside of California) |
|---|---|
| 202102810678 | CALIFORNIA |

**D.  List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address.  If the manager/member is an entity, enter the entity's name and address.  Note:  The LLC cannot serve as its own manager or member.

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Andronico | Adan | Gonzalez | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Abimael | Lupian | Utrera | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 19325 Jesus Maria Road | Mokelumne Hill | CA | 95245 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| Entity Name |
|---|
| |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |