1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                     FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   COOL RUNNINGS INTERNATIONAL              No.  1:21-cv-00974-DAD-HBK
     INC,
12
                      Plaintiff,
13                                            ORDER GRANTING PLAINTIFF'S MOTION
            v.                                FOR A PRELIMINARY INJUNCTION AND
14                                            DENYING IN PART AND GRANTING IN
     ANDRONICO ADAN GONZALEZ, et al.,         PART DEFENDANT'S MOTION TO
15                                            DISMISS
                      Defendants.
16                                            (Doc. Nos. 6, 31)
17
18
19          This matter is before the court on a motion for a preliminary injunction brought by

20   plaintiff Cool Runnings International Inc. ("Cool Runnings," "CRI," or "plaintiff") (Doc. No. 6)

21   and a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

22   by defendant DRC Contracting, LLC ("DRC" or "defendant") (Doc. No. 31).[1]  For the reasons

23   _____

24   [1]  The pending motion for a preliminary injunction was filed on July 12, 2021 and amended on
     July 19, 2021.  Briefing on the pending motion was completed on September 14, 2021.  Pursuant
25   to the court's Standing Order re Judicial Emergency (Doc. No. 4-2), no hearing was scheduled.
     This court's judicial emergency has continued unabated for the last twenty-one months and yet its
26   two vacancies remain unfilled.  The impact on the court's caseload has been devastating.  The
     undersigned is, at last count, presiding over 1,305 civil cases and criminal cases involving 747
27   defendants.  The undersigned is simply not in a position to render timely rulings in civil actions
     such as this one.  This situation is frustrating to the court, which fully realizes how incredibly
28   frustrating it is to the parties and their counsel.

                                                 1

explained below, the court will grant plaintiff's motion for a preliminary injunction and deny in part and grant in part defendant DRC's motion to dismiss.

## FACTUAL BACKGROUND

This action concerns the alleged theft of trade secrets which purportedly provide plaintiff with a competitive advantage in the international refrigeration and cold storage business.  Plaintiff alleges the following in its complaint and motion for a preliminary injunction.

Plaintiff Cool Runnings is a leading provider of commercial and industrial refrigeration and cold storage solutions.  (Doc. No. 1 at ¶ 23.)  Plaintiff provides cold storage refrigeration products, energy management systems, service and maintenance, design, engineering, installation, and construction.  (*Id.* at ¶ 25.)  Plaintiff also designs and installs commercial refrigeration systems, equipment, and custom designed walk-in coolers and freezers.  (*Id.* at ¶ 26.)  Plaintiff's projects are geographically located outside the United States, focused on emerging world markets and developing economies.  (Doc. No. 6-1 at 6.)

Plaintiff has expended significant resources in developing its proprietary information, namely its bid matrix algorithms and "Project Materials Order Form," for the purpose of winning contracts for refrigeration projects.  (Doc. No. 1 at ¶ 28.)  Plaintiff's Project Materials Order Form is its master project materials list that has been developed through years of plaintiff's experience designing, engineering, constructing, and installing cool storage areas.  (*Id.* at ¶ 72.)  It is a compilation of information pertaining to the material items that plaintiff has chosen to use for its international projects, down to each piece of wire, piping, clamp, and insulation.  (*Id.* at ¶ 74.)  Plaintiff's Project Materials Order Form is a key component of plaintiff's bid matrix algorithms and its bid preparation process.  (*Id.* at ¶ 77.)  Plaintiff has submitted a copy of the Project Materials Order Form to the court under seal.  (Doc. No. 57.)

Plaintiff considers this proprietary information to be its trade secrets.  (Doc. No. 1 at ¶ 28.)  Among other protective measures, plaintiff utilizes electronic barriers to protect sensitive information, limits dissemination of information on a need-to-know basis, and requires its contractors to enter into agreements requiring them to keep the information shared with them confidential.  (*Id.* at ¶ 31.)

In July 2018, plaintiff hired defendant Andronico Adan Gonzalez ("Gonzalez") as a contract technical services engineer, where he was a member of a multidisciplinary team that provided information regarding specifications and functions of refrigeration systems, troubleshooted equipment problems, and performed design calculations and engineering assignments.  (*Id.* at ¶¶ 34–35.)  In this job, defendant Gonzalez obtained knowledge of plaintiff's trade secrets, confidential information, goodwill, business relationships, business plans, and bid information with respect to past and future projects.  (*Id.* at ¶ 35.)  Defendant Gonzalez was required to sign a nondisclosure agreement.  (*Id.* at ¶ 37.)

On or about August 24, 2016, plaintiff hired defendant Abimael Lupian Utrera ("Utrera") to provide contract electrician services on plaintiff's projects.  (*Id.* at ¶ 43.)  On or about August 26, 2016, plaintiff hired defendant Jose Olivares Lupian ("Lupian") to provide contract construction services on plaintiff's projects as a carpentry journeyman.  (*Id.* at ¶ 45.)

Plaintiff utilizes Microsoft SharePoint as its document management platform and as a centralized secure space where it stores documents.  (*Id.* at ¶¶ 51-52.)  In order to provide authorized users access to plaintiff's trade secrets and confidential information, plaintiff houses some of its trade secrets and confidential information on a drive referred to as the "CRI Share Drive."  (*Id.* at ¶ 53.)  Plaintiff's bid matrix algorithms, including the "Cool Runnings Project Materials Order Form," past bid proposals, in-process future bid proposals, customer information, project specifications, documents containing pricing, materials and construction cost information, design plans, technical plans, and engineering information are stored on the CRI Share Drive.  (*Id.* at ¶ 54.)  To facilitate defendant Gonzalez's access to the CRI Share Drive, plaintiff provided him with a company-owned Microsoft Surface laptop.  (*Id.* at ¶ 57.)

On December 23, 2020, both defendant Gonzalez and defendant Utrera resigned from Cool Runnings and began working with defendant DRC, a newly formed refrigeration company.  (*Id.* at ¶¶ 58–60.)  On December 24, 2020, defendant Lupian similarly resigned from his position with plaintiff and went to work for DRC.  (*Id.* at ¶ 81.)  Despite having terminated his position as a contract technical services engineer for plaintiff on December 23, 2020, defendant Gonzalez did not immediately return his company-issued Microsoft Surface laptop.  (*Id.* at ¶ 62.)  Defendant

3

Gonzalez did not return the laptop until January 12, 2021, when he permitted plaintiff's contractor in Guadalajara, Mexico to pick it up. (*Id.* at ¶ 67.) Plaintiff then hired a forensic expert to conduct a forensic analysis of defendant Gonzalez's laptop. (Doc. No. 6-1 at 13.) The analysis showed that numerous Cool Runnings' files had been copied from the laptop onto various external storage devices. (*Id.*) In the days after defendant Gonzalez ended his employment relationship with Cool Runnings, and while he retained possession of the laptop, multiple external storage devices were connected to the computer and large volumes of plaintiff's files were copied onto those storage devices. (Doc. No. 1 at ¶ 68.) Among those files that were copied were plaintiff's Project Materials Order Form, design guides, and project specific information relating to plaintiff's estimates on projects for which it had already submitted quotes. (*Id.* at ¶ 69.)

On January 1, 2021, defendant DRC registered its formation as a limited liability company with the California Secretary of State. (Doc. No. 1 at ¶ 85.) Defendant DRC's managers are listed as D.R. Cline Enterprises, Inc., defendant Gonzalez, and defendant Utrera. (*Id.* at ¶ 87.) D.R. Cline Enterprises, Inc. is a California corporation owned and operated by Danny R. Cline, a former owner of an international refrigeration company. (*Id.* at ¶¶ 88–89.)

On or about January 25, 2021, plaintiff submitted a bid proposal to PriceSmart, Inc. ("PriceSmart")[2] for the installation and construction of refrigerated and cool storage areas for a new PriceSmart store in Bucaramanga, Colombia. (*Id.* at ¶ 95.) Defendant DRC also submitted a bid for the PriceSmart Bucaramanga project and won the contract. (*Id.* at ¶¶ 96-97.)

Then, on or about March 8, 2021, plaintiff submitted a different proposal to PriceSmart for the design, installation, and construction of a produce distribution center at an existing PriceSmart facility in La Vega, Dominican Republic. (*Id.* at ¶ 98.) Defendant DRC also submitted a bid for the La Vega project and again defendant DRC was chosen as the winning bid. (*Id.* at ¶¶ 99–100.)

---

[2] PriceSmart, owns and operates U.S.-style shopping warehouse clubs in Latin America and the Caribbean. (Doc. No. 1 at ¶ 91.) PriceSmart is a substantial customer of plaintiff, who has been PriceSmart's refrigeration contractor of choice for new PriceSmart club stores and major remodel projects for several years. (*Id.* at ¶¶ 92–94.)

On or about April 8, 2021, plaintiff received an email to the Cool Runnings email address that was previously assigned to defendant Gonzalez while he was a contractor for plaintiff. (*Id.* at ¶ 102.) The April 8, 2021 email was sent from defendant Lupian using his DRC email address to defendant Utrera at his DRC email address and to defendant Gonzalez at his former Cool Runnings email address apparently by mistake. (*Id.* at ¶ 103.) A single file was attached to the email. (*Id.* at ¶ 104.) The attached file was essentially a copy of plaintiff's Project Materials Order Form, which plaintiff alleges was previously copied by defendant Gonzalez onto an external storage device from the aforementioned CRI Surface laptop. (*Id.* at ¶ 105.) In the attached file, most references to Cool Runnings had been replaced with DRC, but some references to "CRI," "CRI Built," and "CRI Warehouse" remained designated as preferred vendors or manufacturers in the copied document. (*Id.* at ¶ 107.) The substantive project materials information contained in the copied document, with few and minor changes, is a copy of plaintiff's Project Material Order Form. (*Id.* at ¶ 110.)

Based on these allegations, plaintiff asserts that defendants misappropriated plaintiff's trade secrets and launched a competing refrigeration business utilizing plaintiff's valuable confidential business information. (*Id.* at ¶ 111.) Specifically, plaintiff asserts the following five causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA") against defendant Gonzalez; (2) conspiracy to violate the CFAA against defendant DRC; (3) breach of contract against defendant Gonzalez; (4) violation of the California Uniform Trade Secrets Act ("CUTSA") against defendants Gonzalez, Utrera, Lupian, and DRC; and (5) violation of the federal Defend Trade Secrets Act ("DTSA") against defendants Gonzalez, Utrera, Lupian, and DRC. (*Id.* at 13–18.) Plaintiff also seeks a preliminary injunction enjoining defendant DRC from using plaintiff's trade secrets. (Doc. No. 6-1.) Plaintiff alleges that the misappropriation of its trade secrets has already caused, and will continue to cause, substantial harm to its competitive position in the Latin American refrigeration business market. (*Id.* at 14.)

**PROCEDURAL BACKGROUND**

On July 12, 2021, plaintiff filed a motion for a preliminary injunction, requesting that the court enjoin defendant DRC from: (1) obtaining, retaining, using, transmitting, disseminating,

5

1   directly or indirectly, plaintiff's trade secrets; (2) using any information obtained from plaintiff's

2   computer system, including to solicit business from plaintiff's customers; and (3) requiring that

3   defendant DRC disgorge itself of plaintiff's trade secrets; as well as provide a verification process

4   whereby defendant DRC's electronically stored information is examined to verify the return and

5   removal of all of plaintiff's trade secrets.  (Doc. No. 6-1 at 6.)  On July 20, 2021, defendant filed

6   a motion for a 65-day extension of time to oppose plaintiff's motion for a preliminary injunction.

7   (Doc. No. 19.)  The court directed plaintiff to file a response to defendant's proposed extended

8   briefing schedule.  (Doc. No. 20.)  On July 22, 2021, plaintiff filed its opposition to defendant's

9   motion for an extension of time and defendant filed a reply thereto.  (Doc. Nos. 25, 26.)  On July

10   23, 2021, the court set a September 21, 2021 hearing date on the motion for preliminary

11   injunction.  (Doc. No. 27.)  On September 7, 2021, defendant DRC filed an opposition to the

12   pending motion for a preliminary injunction.  (Doc. No. 39.)  On September 14, 2021, plaintiff

13   filed a reply thereto.  (Doc. No. 41.)

14        Additionally, on July 29, 2021, defendant DRC filed a motion to dismiss plaintiff's claims

15   brought against it.  (Doc. No. 31.)  Plaintiff filed an opposition to that motion on September 7,

16   2021, and on September 14, 2021, defendant filed a reply thereto.  (Doc. Nos. 38, 42.)

17                                  **LEGAL STANDARD**

18   **A.     Motion for a Preliminary Injunction**

19        "The proper legal standard for preliminary injunctive relief requires a party to demonstrate

20   'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

21   absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

22   is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting

23   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v.*

24   *Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that

25   irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'")

26   (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  The Ninth

27   Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that

28   serious questions going to the merits were raised and the balance of hardships tips sharply in the

6

plaintiff's favor." *All. for Wild Rockies*, 632 F.3d at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter*, 555 U.S. 7.[3] The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**B.     Rule 12(b)(6) Motion to Dismiss**

The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

---

[3]  The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

1   1989).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

2   that the defendants have violated the . . . laws in ways that have not been alleged." *Associated*

3   *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

5   A.      **Plaintiff's Motion for a Preliminary Injunction**

6          As noted at the outset, as the party seeking preliminary injunctive relief, plaintiff must

7   make a sufficient showing as to all four prongs of the *Winter* test in order to be entitled to the

8   requested preliminary relief.  *All. for the Wild Rockies*, 632 F.3d at 1135.  Below, the court

9   addresses those factors and plaintiff's showing with respect to each.

10         1.      Likelihood of Success on the Merits

11         Plaintiff bears the burden of demonstrating that it is likely to succeed on the merits of this

12  action or, at the very least, that "serious questions going to the merits were raised."  *All. for the*

13  *Wild Rockies*, 632 F.3d at 1131.  The court turns to consideration of plaintiff's likelihood of

14  success on its claims brought under California and federal trade secrets law, the claims which are

15  at issue in plaintiff's motion for preliminary injunction.  Specifically, plaintiff seeks injunctive

16  relief against DRC with respect to its fourth claim for violation of the CUTSA and fifth claim for

17  violation of the DTSA.  (Doc. No. 6-1 at 15.)

18         "California has adopted the Uniform Trade Secrets Act ("UTSA"), which codifies the

19  basic principles of common law trade secret protection."  *MAI Sys. Corp. v. Peak Computer, Inc.*,

20  991 F.2d 511, 520 (9th Cir. 1993) (citing Cal. Civ. Code §§ 3426–3426.10 ("CUTSA")).  "To

21  establish a violation of the CUTSA, a plaintiff must show (1) the existence of a trade secret, and

22  (2) misappropriation of the trade secret."  *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp.

23  3d 1198, 1205 (E.D. Cal. 2020).

24         A "trade secret" is "information, including a formula, pattern, compilation, program,

25  device, method, technique, or process, that:  (1) [d]erives independent economic value, actual or

26  potential, from not being generally known to the public . . ., and (2) [i]s the subject of efforts that

27  are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).  "In

28  other words, the information 'is valuable because it is unknown to others' and 'the owner has

8

1  attempted to keep [it] secret.'"  *Cutera, Inc.*, 444 F. Supp 3d at 1205 (quoting *DVD Copy Control*

2  *Assn. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004)).

3       "The CUTSA defines 'misappropriation' as, *inter alia*, the acquisition of a trade secret by

4  'improper means,' which includes 'theft, bribery, misrepresentation, breach or inducement of a

5  breach of a duty to maintain secrecy.'"  *Id.* (quoting Cal. Civ. Code § 3426.1(a), (b)(1)).

6  "'Misappropriation' also means disclosure or use of a trade secret without the owner's consent."

7  *Id.* (citing Cal. Civ. Code § 3426.1(b)(2)).  "Use" includes "soliciting customers through the use

8  of trade secret information."  *Id.* (citing *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1369, 1383

9  (2000)).

10       At the federal level, the DTSA similarly permits the "owner of a trade secret that is

11 misappropriated" to bring a civil action, 18 U.S.C. § 1836(b), and includes substantially similar

12 definitions of "trade secret" and "misappropriation."  18 U.S.C. § 1839(3), (5); *see also Cutera,*

13 *Inc.*, 444 F. Supp. 3d at 1205.  The court can therefore analyze plaintiff's state and federal trade

14 secret claims jointly.  *Cutera, Inc.*, 444 F. Supp. 3d at 1205.

15            a.    *Existence of Trade Secrets*

16       "To prove ownership of a trade secret, plaintiffs 'must identify the trade secrets and carry

17 the burden of showing they exist.'"  *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d

18 653, 659 (9th Cir. 2020) (quoting *MAI Sys. Corp.*, 991 F.2d at 522).  "Plaintiffs may not simply

19 rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial."

20 *Id.* (citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998)).  "[A] trade

21 secret may consist of a compilation of data, public sources or a combination of proprietary and

22 public sources."  *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016).  "Expressed

23 differently, a compilation that affords a competitive advantage and is not readily ascertainable

24 falls within the definition of a trade secret."  *Id.* at 1042.  "As a general principle, the more

25 difficult information is to obtain, and the more time and resources expended by an employer in

26 gathering it, the more likely a court will find such information constitutes a trade secret."

27 *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997).

28 /////

                                      9

Plaintiff identifies the following information as trade secrets that are contained in the files allegedly downloaded, copied, and retained by defendants, which the court will refer to in this order as "Cool Runnings Trade Secret Information":

> [T]echnical plans; engineering information; designs, compilations, methods and processes, customer, supplier and vendor information; pricing structure and information; materials and construction costs particular to different geographic areas; and Cool Runnings' bid matrix algorithms, in which Cool Runnings has compiled, summarized and synthesized its proprietary information over the course of years.

(Doc. Nos. 1 at 4; 6–1 at 32.)  Additionally, plaintiff sets out example embodiments of its alleged trade secrets.  (Doc. No. 41 at 7.)  For example, plaintiff described the materials on its CRI Share Drive as including:

> Cool Runnings' bid matrix algorithms, including Cool Runnings Project Materials Order Form, past bid proposals, in-process future bid proposals, customer information, project specifications, documents containing pricing, materials and construction cost information, design plans, technical plans, and engineering information.

(Doc. Nos. 1 at 7; 6-1 at 32–33.)

In opposition to the pending motion for a preliminary injunction, defendant argues that the Project Materials Order Form simply compiles public domain information that is readily ascertainable.  (Doc. No. 39 at 12.)  Defendant describes the various columns and categories of information included in the Order Form and asserts that any "contractors in the commercial refrigeration industry [] can easily compile such a spreadsheet from public domain sources."  (*Id.* at 13–14—sealed.)  Lastly, defendant contends that the Order Form is merely meant for one project based in Trinidad and would therefore be of no use with respect to future projects.  (*Id.*) [4]

---

[4]  Defendant DRC also argues that the Project Materials Order Form is the only alleged trade secret stated with sufficient particularity by plaintiff to warrant consideration.  (Doc. No. 39 at 10.)  The court is inclined to agree.  Nonetheless, because the court concludes that the Project Materials Order Form likely constitutes a trade secret, there is a sufficient showing made that at least some of plaintiff's allegedly misappropriated information contains trade secrets, thus supporting the issuance of a preliminary injunction.  *See Cutera, Inc.*, 444 F. Supp. 3d at 1206 ("For the purposes of this motion, the court is satisfied that at least some of the [Trade Secret Information] consists of sufficiently identified compilations of information[.]").  The court will therefore appropriately tailor the injunctive relief ordered herein.

10

1    The court is satisfied for purposes of resolving the pending motion that at least some of

2   the Cool Runnings Trade Secret Information consists of sufficiently identified compilations of

3   information which "derive [] independent economic value, actual or potential, from not being

4   generally known to the public."  Cal. Civ. Code § 3426.1(d)(1); *see also Pyro Spectaculars N.,*

5   *Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012) (finding that, although publicly

6   available customer identity and contact information by itself may not be a trade secret, plaintiff's

7   "comprehensive, if not encyclopedic, compilation of customer, operator, and vendor information"

8   was likely protectable trade secret).  Specifically, the court finds that plaintiff has come forward

9   with adequate evidence in this regard with respect to the Project Materials Order Form.

10    The evidence presented in support of the pending motion, including a copy of the Project

11   Materials Order Form itself, shows that the Order Form file is a detailed and lengthy compilation

12   that was "developed and created by Cool Runnings through years of experience designing,

13   engineering, constructing, and installing cool storage areas."  (Doc. No. 6-1 at 36, 41.)[5]  The

14   Order Form includes detailed pricing information for nearly every, if not every, part necessary to

15   construct a refrigeration project.  (Doc. No. 57—sealed.)  These parts range from a single wire

16   and a pack of screws to Kevlar gloves and a humidity sensor, with thousands of other necessary

17   items in between.  (*Id.*)  Moreover, the Order Form contains plaintiff's preferred vendor for each

18   of these many parts, as well as shipping, customs, and tariff information such as harmonization

19   codes, dimensions, weight, manufacturer, and country of origin for each individual material item

20   that plaintiff has chosen for use in its projects.  (*Id.*)  The Order Form encompasses over 100

21   pages of columns and tables, organizing the respective parts and their details by individual row.

22   (*Id.*)  Each of these pages includes over 30 different specific material items, their size, their

23   description, their cost, and the preferred vendor with respect to each item.  (*Id.*)  The detail and

24   comprehensiveness of the pricing information is manifest.  Further, the Order Form is divided

25   into various sections, with each section pertaining to a different aspect of any given project.  (*Id.*)

26   For example, the first section of the Order Form contains a lengthy, detailed table listing each

27   _____

28   [5]  The copied folders also include a confidential estimate for installing a produce center in
Panama and the proposed construction schedule for that project.  (Doc. No. 6-1 at 38, 77.)

item that would be required for the "mechanical" aspects of a project.  (*Id.*)  The second section

does the same but for the "electrical" aspects of a project, the third for "carpentry," and so on,

with each section containing between five and twenty pages of material items and their unique

pricing information.  (*Id.*)  Lastly, the Order Form has a "quantity" column throughout, where

plaintiff can easily enter the necessary amounts of a given part for any specific project and thus

conveniently calculate a total bid for the project in question.

   Courts in California have routinely found price lists such as the Project Materials Order

Form to be trade secrets in that they are used to avoid the labor expended in calculating bids on

projects such as the refrigeration projects at issue here.  *See, e.g.*, *Cutera, Inc.*, 444 F. Supp. 3d at

1206 (finding "price and cost information, including current manufacturing and vendor costs" to

be a trade secret); *Earthbound Corp. v. MiTek USA, Inc.*, No. 16-cv-7223-DMG-JPR, 2017 WL

2919101, at *12 (C.D. Cal. Feb. 10, 2017) ("A list containing all bid and price estimates for any

given project permits those with access to that list to avoid the hours of labor expended in

calculating the bid and price numbers . . .. [Plaintiff's] compiled lists present all of that

information in one location such that an independent and time-consuming review is unnecessary.

Thus, these lists are 'classic examples' of trade secrets."); *Pyro-Comm Sys. Inc. v. W. Coast Fire

& Integration Inc.*, No. 14-cv-2028-JLS-RNB, 2015 WL 12765143, at *1 (C.D. Cal. Apr. 2,

2015) (finding that software that determined the appropriate pricing for a project bid, "taking into

account material costs and margins, special factor pricing, and other information" qualified as a

trade secret); *Argo Grp. US, Inc. v. Prof'l Governmental Underwriters, Inc.*, No. 13-cv-1787-AG-

DFM, 2013 WL 11327772, at *2 (C.D. Cal. Dec. 6, 2013) ("[I]nformation regarding profit

margins, costs, and market research can be protected trade secrets."); *Whyte v. Schlage Lock Co.*,

101 Cal. App. 4th 1443, 1454–56 (2002) (trade secrets may constitute "cost and pricing

information not readily known in the industry-information such as the cost of materials, labor,

overhead, and profit margins . . ..");  *compare with Admor HVAC Prod. Inc. v. Lessary*, No. 19-

cv-00068-SOM-KJM, 2019 WL 2518105, at *10–11 (D. Haw. June 18, 2019) (finding

insufficient a plaintiff's mere mention of generalized categories of pricing information without

actual substance).  Even if some of the individual parts or prices in the Order Form are publicly

1    known, it is the secrecy of the claimed trade secret as a whole that is determinative.  *See Nosal*,

2    844 F.3d at 1042 (citing Restatement (Third) of Unfair Competition § 39 cmt. f (1995)).  "[T]he

3    theoretical possibility of reconstructing the secret from published materials containing scattered

4    references to portions of the information . . . will not preclude relief against the wrongful

5    conduct." *Id.*

6         It is clear from the extensive detail and precision of the Order Form that access to it would

7    also allow defendant to precisely calculate plaintiff's future bids and undercut them.  Plaintiff has

8    offered sufficient evidence in moving for preliminary injunctive relief to establish that access to

9    the information contained in the Order Form would give a competitor a substantial business

10   advantage and that such information is not otherwise readily ascertainable.  Although defendant

11   argues that the Project Materials Order Form is "no more than a glorified parts list for a job in

12   Trinidad that would have been used in a bid in 2020 before DRC was ever organized," plaintiff

13   has come forward with evidence showing that any "Trinidad" label on the Order Form was

14   merely an example and the "Project Materials Order Form is a template form."  (Doc. Nos. 39 at

15   8; 41 at 9.)  The court is persuaded that the Order Form is a confidential template used by plaintiff

16   for its exclusive use in the bid preparation process and in the completion of its projects.

17        The court also finds that the Cool Runnings Trade Secret Information was likely "the

18   subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ.

19   Code § 3426.1(d); *Pyro Spectaculars*, 861 F. Supp. 2d at 1092 (finding that, although plaintiff's

20   "security practices are not perfect," those issues could be further explored in discovery and at trial

21   and that the efforts taken were sufficiently reasonable to support the issuance of the preliminary

22   injunction).  When plaintiff grants a contractor access to the sensitive information stored on

23   plaintiff's internal drives, it requires that the contractor sign a nondisclosure agreement.  (Doc.

24   No. 6-1 at 18, 49) (defendant Gonzalez's signed nondisclosure agreement); *see also MAI Systems*,

25   991 F.2d at 521 (use of a confidentiality agreement supported a finding that "reasonable efforts"

26   had been undertaken).  Further, plaintiff limits dissemination of its confidential information to

27   contractors on a need-to-know basis and uses electronic barriers and password-protected

28   databases.  (Doc. No. 6-1 at 18, 45.)  This evidence is sufficient to establish that plaintiff made

13

1   reasonable efforts to maintain the secrecy of its Trade Secret Information.  *See Cutera, Inc.*, 444

2   F. Supp. 3d at 1207.

3        Accordingly, the court concludes that plaintiff is likely to succeed in showing that at least

4   some of the Cool Runnings Trade Secret Information "derives independent economic value" and

5   that it undertook "reasonable efforts" to protect its secrecy.  Cal. Civ. Code § 3426.1(d).  Thus,

6   plaintiff has made a sufficient showing that its trade secrets exist.

7            b.    *Misappropriation*

8        "The CUTSA defines misappropriation as including the '[a]cquisition of a trade secret of

9   another by a person who knows or has reason to know that the trade secret was acquired by

10   improper means' and the 'use of a trade secret of another without express or implied consent by a

11   person who [] [u]sed improper means to acquire knowledge of the trade secret.'"  *Cutera, Inc.*,

12   444 F. Supp. 3d at 1207 (quoting Cal. Civ. Code § 3426.1(b)).  "Misappropriation under the

13   DTSA is identical to that under the CUTSA in this respect."  *Id.* (citing 18 U.S.C. § 1839 (5)).

14        Here, plaintiff asserts that defendant Gonzalez knew that access to plaintiff's SharePoint

15   Systems and Share Drive was restricted to authorized employees but that he nonetheless retained

16   his Cool Runnings issued laptop for over two weeks after he resigned from his position as a

17   contractor for plaintiff.  (Doc. No. 6-1 at 18.)  Plaintiff further contends that during that time

18   period, defendant Gonzalez accessed SharePoint files without authorization and copied numerous

19   Cool Runnings confidential files, including the Project Materials Order Form, onto external

20   storage devices.  (*Id.*)  According to plaintiff, through these actions, defendant Gonzalez acquired

21   plaintiff's trade secrets by improper means; namely, by theft.  (*Id.*)  Alternatively, and in addition

22   to the theft theory of misappropriation, plaintiff alleges that defendant Gonzalez misappropriated

23   plaintiff's trade secrets by breaching his contractual duty to maintain the secrecy of plaintiff's

24   trade secrets, in violation of the nondisclosure agreement that he signed.  (*Id.* at 19) (citing *Henry*

25   *Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (holding that the plaintiff was

26   likely to succeed on the merits of its DTSA and CUTSA claims because the defendant, who was

27   subject to a confidentiality agreement, emailed and downloaded confidential information before

28   leaving her employment)).

1        In its opposition to the pending motion, defendant advances three arguments as to why its

2   actions do not qualify as misappropriation.  (Doc. No. 39 at 17.)  First, defendant argues that

3   defendant Gonzalez was an independent contractor and therefore any documents created, or

4   information compiled by defendant Gonzalez during his contracted work would have remained

5   his property.  (*Id.* at 18.)  Defendant further contends that "[b]y failing to identify the 'trade

6   secrets' allegedly taken by [defendant Gonzalez] with particularly . . ., CRI's Motion papers

7   present no basis on which the Court can differentiate confidential information owned by CRI

8   from work product owned by [Gonzalez]."  (*Id.*)  Second, defendant argues that mere possession

9   of any claimed trade secrets is insufficient to establish liability because California courts do not

10  recognize the "inevitable disclosure doctrine."  (*Id.* at 18–19.)  Third, defendant argues that

11  DRC's principal, Dan Cline, did not rely upon the Project Materials Order Form or any other

12  information obtained from CRI when preparing DRC's bids submitted on projects after defendant

13  Gonzalez and defendant Utrera resigned from Cool Runnings.  (*Id.* at 19.)  Defendant avers that

14  Mr. Cline has his own system for generating proposals, as well as his own pricing and vendor

15  relationships upon which those proposals were based.  (*Id.*)

16        The court notes that the declaration of plaintiff's forensic examiner strongly suggests that

17  some of the Cool Runnings Trade Secret Information was taken by defendant Gonzalez near the

18  time he joined DRC, given that large volumes of files were copied from the Cool Runnings laptop

19  to external storage devices.  (Doc. No. 6-1 at 77–79.)  Indeed, defendant DRC does not appear to

20  dispute that defendant Gonzalez downloaded this information and took it.  It is reasonable to infer

21  from this evidence that defendant Gonzalez possessed the documents and folders containing

22  CRI's trade secret information when he became an employee of DRC, or shortly thereafter.  The

23  court recognizes that "[m]ere possession of trade secrets by a departing employee" is not

24  sufficient to establish misappropriation or show injury.  *See Norsat Int'l, Inc. v. B.I.P. Corp.*, No.

25  12-cv-674-WQG-NLS, 2014 WL 2453034, at *6 (S.D. Cal. May 30, 2014).  However, the

26  evidence indicating that defendant Gonzalez downloaded folders containing specific information

27  relating to plaintiff's estimates on projects for which it had already submitted quotes as well as

28  the Project Material Orders Form strongly suggests that defendant DRC intended to use the

15

1    information.  Indeed, the April 8, 2021 email and the copied file attached thereto suggest that

2    defendant DRC *already had* used plaintiff's confidential Project Materials Order Form in

3    submitting its bid for the La Vega project.  (Doc. No. 6-1 at 11, 35.)  This undisputed evidence of

4    the copying of plaintiff's information, paired with the evidence that DRC employees have used

5    the copied information in their work, leads the court to conclude that plaintiff has shown a

6    likelihood of success of satisfying the misappropriation element of its trade secrets claim.

7              2.        Whether Plaintiff Will Suffer Irreparable Harm

8              Having determined that plaintiff has shown a likelihood of success on the merits of its

9    trade secrets claims against defendant DRC, the court turns to consider whether plaintiff has

10   shown that it will suffer irreparable harm absent the granting of a preliminary injunction.  *Winter*,

11   555 U.S. at 20.  The phrase "irreparable harm" is a term of art, meaning a party has suffered a

12   wrong which cannot be adequately compensated by remedies available at law, such as monetary

13   damages.  *See eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "Ordinarily,

14   economic injury is not irreparable because monetary damages are an adequate remedy."  *Cutera,*

15   *Inc.*, 444 F. Supp. 3d at 1208 (citing *Rent-A-Center, Inc. v. Canyon Television & Appliance*

16   *Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  However, "intangible injuries, such as damage

17   to ongoing recruitment efforts and goodwill, qualify as irreparable harm."  *Id.*; *see also Stuhlbarg*

18   *Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (evidence of threatened

19   loss of prospective customers or goodwill supports an irreparable harm finding).  In the wake of

20   the Supreme Court's decision in *eBay*, the Ninth Circuit has held that a plaintiff seeking

21   preliminary injunctive relief must demonstrate that "irreparable injury is *likely* in the absence of

22   an injunction."  *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th

23   Cir. 2013) (quoting *Winter*, 555 U.S. at 22).  Because irreparable harm must be demonstrated and

24   not merely alleged, the granting of a preliminary injunction must also be based on evidence

25   showing irreparable harm.  *See id.* at 1250 (reversing the district court's granting of preliminary

26   injunctive relief in a trademark infringement suit because its "analysis of irreparable harm is

27   cursory and conclusory, rather than being grounded in any evidence").

28   /////

The Ninth Circuit has not yet reached the question of whether a court may presume irreparable harm in trade secret cases. *See Bank v. Shanker*, No. 20-cv-07364-WHO, 2021 WL 3112452, at *12 (N.D. Cal. July 22, 2021) (collecting cases). Nonetheless, even absent a presumption of injury, a likelihood of irreparable harm has been established because absent the granting of a preliminary injunction plaintiff will likely suffer loss of a market portion, loss of current and prospective customers, and increased risk of disclosure of plaintiff's confidential information to third parties. "In trade secret cases, '[i]t is well established that the loss of market position and the disclosure of trade secrets can constitute irreparable harm.'" *Id.* (quoting *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853–54 (N.D. Cal. 2019)). Other courts addressing this issue have so found. *See, e.g.*, *Cutera, Inc.*, 444 F. Supp. 3d at 1208–09 (finding use of alleged trade secrets suggested that defendant would continue to use the information without the granting of an injunction); *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-cv-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (finding a likelihood of irreparable harm because "Defendant took proprietary information relating to a new product from Plaintiff and immediately began working for one of Plaintiff's competitors, which indicates Plaintiff risks losing customers as a result of Defendant's conduct"); *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017) (noting that irreparable harm is likely where "it may prove impossible to fully restore the parties to their respective competitive positions as if no misappropriation had occurred").

Plaintiff has submitted evidence that defendant Gonzalez deliberately transferred a large quantity of electronic information consisting of plaintiff's documents and folders from his Cool Runnings laptop to an external drive and that defendant DRC used at least some of plaintiff's claimed trade secrets to defendant's apparent competitive advantage. As described above, the April 8, 2021 email between current DRC employees, which contained a nearly identical copy of the Project Material Order Form template, strongly suggests that defendant DRC has relied upon plaintiff's proprietary information as misappropriated by defendant Gonzalez in formulating at least one of its competing bids. (*See* Doc. No. 6-1 at 35.) In fact, because the file was labeled "Copia de DRC 2021 Master Parts Order for La Vega PDC (969).xlsx," the court infers that the

1    misappropriated information was likely used directly to plaintiff's detriment by defendant DRC in

2    its successful bid on the La Vega project last spring.  (*See id.* at 36.)  All of this evidence gives

3    rise to a reasonable inference that defendant Gonzalez intended to use this misappropriated trade

4    secret information to benefit DRC and will continue to do so absent the granting of an injunction.

5           Based on the evidence before the court it appears that defendant Gonzalez downloaded

6    and retained possession of a large amount of confidential Cool Runnings files—at least some of

7    which contain trade secrets—for "the ostensible purpose of using the information therein in his

8    work for a competitor."  *Waymo LLC*, 2017 WL 2123560, at *10.  As in *Waymo*, such misuse of

9    that information might be "virtually untraceable."  *Id.*  For example, defendant DRC might claim

10   (and indeed does so in opposition to the pending motion (Doc. No. 39 at 19)) that it has its own

11   system for generating bid proposals and its own pricing and vendor relationships that have

12   nothing to do with plaintiff's trade secrets.  In addition, if defendant DRC used plaintiff's trade

13   secrets to accelerate its own success in the refrigeration market, that momentum would improve

14   their ability to attract customers and talented employees away from competitors.  "It would likely

15   be futile to attempt, after the fact, to estimate the monetary value of injury suffered from either

16   the loss of [plaintiff's] competitive position in this [industry] or the destruction of its trade secrets

17   pertaining to the same."  *Waymo LLC*, 2017 WL 2123560, at *11.

18          Collectively, the evidence currently before the court supports the conclusion that there is a

19   strong likelihood that defendant DRC is using or will use the Cool Runnings Trade Secret

20   Information to its competitive benefit and to plaintiff's harm—a harm that is irreparable since it

21   cannot be cured through the award of monetary damages.  Accordingly, the court concludes that

22   plaintiff has shown that it will suffer irreparable harm without the granting of the requested

23   preliminary injunctive relief.

24          3.    Public Interest

25          "In exercising their sound discretion, courts of equity should pay particular regard for the

26   public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at

27   24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  Trade secret cases

28   involving former employees generally invoke two competing public interests:

On the one hand, California has a "settled legislative policy in favor of open competition and employee mobility," protecting "the important legal right of persons to engage in businesses and occupations of their choosing." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008). On the other hand, the state also has a strong policy in favor of protecting trade secrets. *Retirement Group v. Galante*, 176 Cal. App. 4th 1226, 1237 (2009) ("An equally lengthy line of cases has consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer").

*Pyro Spectaculars*, 861 F. Supp. 2d at 1092; *see also Morlife*, 56 Cal. App. 4th at 1520.

Although an overbroad injunction would conflict with California's policy in favor of open competition, employee mobility, and the right to pursue a business or occupation, here plaintiff merely seeks an injunction enjoining defendant from using its trade secrets at issue in this case. (Doc. No. 6-1 at 22–23.) The court concludes that an injunction specifically focused on preventing the misuse of plaintiff's Project Materials Order Form to solicit customers would serve the policy of protecting trade secrets while simultaneously allowing lawful competition. *Pyro Spectaculars*, 861 F. Supp. 2d at 1093. Defendant argues, in conclusory fashion, that "[t]he sought after injunction would also effectively prevent DRC from directing its staff and contractors to perform their current duties." (Doc. No. 39 at 29.) The court simply fails to see how that would be the case. The requested relief does not prevent defendant from directing the former Cool Runnings employees to perform their current duties, it merely restricts their access to and use of Cool Runnings' claimed trade secrets, specifically the Project Materials Order Form. Under these circumstances, the court concludes that it is in the public's interest to issue an injunction specifically focused on defendant's use of the Project Materials Order Form that defendants misappropriated from plaintiff. *See Cutera, Inc.*, 444 F. Supp. 3d at 1210; *Pyro Spectaculars*, 861 F. Supp. 2d at 1093.

4.   <u>Balance of Equities</u>

"A court must 'balance the interests of all parties and weigh the damage to each' in determining the balance of the equities." *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 852 (9th Cir. 2019) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).
/////

19

1    In its pending motion for a preliminary injunction, plaintiff argues that the injunction

2    would merely prohibit the use of misappropriated trade secrets and therefore the balance of

3    equities tips in its favor.  (Doc. No. 6-1 at 21–22.)

4    In its opposition to plaintiff's motion, defendant DRC argues that the proposed injunction

5    would require it to stop using whole categories of undefined information; turn over to plaintiff

6    "all DRC data storage devices containing the same laundry list of vaguely-defined files that CRI

7    unjustifiably claims as its 'trade secrets;'" certify in writing that the above actions have been

8    taken; and "permit an ESI vendor selected by CRI to access each and every data system used by

9    DRC, its members, and its contractors so that CRI may undertake an unsupervised fishing

10    expedition through DRC's business information."  (Doc. No. 39 at 24–25.)  Defendant contends

11    that an injunction encompassing these actions will in fact alter the status quo.  (*Id.* at 25.)

12    Moreover, defendant contends that the doctrine of "unclean hands" may militate against issuing

13    the requested injunction.  (*Id.*)  Defendant describes several incidents where plaintiff has

14    allegedly engaged in misappropriation of defendant's confidential information in the past.  (*See*

15    *generally id.* at 26.) [6]

16    In its reply, plaintiff argues that any change to the status quo would be to the status quo

17    *ante litem*, "the last uncontested status which preceded the pending controversy."  (Doc. No. 41 at

18

19    _____

[6]  Defendant's arguments with respect to the "unclean hands" doctrine are not applicable here.
20    That doctrine pertains only to misdeeds that have "an immediate and necessary relation to the
equity that [a plaintiff] seeks in respect of the matter of litigation."  *Keystone Driller Co. v. Gen.*
21    *Excavator Co.*, 290 U.S. 240, 241 (1933); *see also S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921,
932 (9th Cir. 2014).  "What is material," in other words, "is not that the plaintiff's hands are dirty,
22    but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying
renders inequitable the assertion of such rights against the defendant."  *Republic Molding Corp. v.*
23    *B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963).  Here, defendant DRC has set out a laundry
list of accusations of general wrongdoing that it claims plaintiff engaged in from 2015–2017.
24    (Doc. No. 39 at 26–28.)  Although some of these allegations relate generally to the issue of
plaintiff hiring former DRC employees and using their knowledge to its advantage, none of the
25    allegations relate directly to the trade secrets at issue in this case, namely the Project Materials
Order Form.  Nowhere does defendant DRC allege that plaintiff acted with unclean hands after
26    defendant Gonzalez resigned from plaintiff's employment on December 23, 2020.  *See Seller*
*Agency Council, Inc. v. Kennedy Ctr. For Real Estate Educ., Inc.*, 621 F.3d 981, 987 (9th Cir.
27    2010) (distinguishing unclean hands actions that occurred before the date of the event in question
from those that occurred after).
28

15.)  Plaintiff avers that "the last uncontested status was the point in time before Cool Runnings' trade secrets were misappropriated by its members and the requested injunction seeks to restore the parties to that status."  (*Id.*)

Consideration of the balance of the equities weighs in plaintiff's favor here.  The issuance of a narrowly tailored injunction will prevent defendant DRC from using misappropriated information and will thereby minimize the competitive harm suffered by plaintiff as a result.  *See Cutera, Inc.*, 444 F. Supp. 3d at 1209.  Nonetheless, the court also recognizes defendant's concerns regarding the broad, vague, and intrusive nature of the preliminary relief requested by plaintiff.  In short, plaintiff asks the court to enjoin the use of undefined trade secrets in addition to the Project Materials Order Form and to force defendant DRC to turn over its computers and electronics for plaintiff's review to ensure enforcement of the court's order.  (Doc. No. 7-1.) Acknowledging the overreach of plaintiff's request in this regard, the court will limit the injunction solely to the Project Materials Order Form and will not require defendant DRC to turn over its computers for plaintiff's review.  Rather, the court will require only the return of the Order Form and the production of signed affidavits verifying defendant's compliance with the court's order.  The court will also enjoin defendant DRC from directly or indirectly retaining, using, transmitting, disseminating, or disclosing the Cool Runnings Project Materials Order Form, and from using the Cool Runnings Project Materials Order Form for any purpose, including using the Order Form directly or indirectly to solicit or conduct business with, any Cool Runnings actual or potential customer.  The court will also direct defendant DRC to return to Cool Runnings all documents, materials or information which constitute, contain, or summarize the Cool Runnings Project Materials Order Form, and to thereafter purge or destroy any and all copies, recordings, electronic copies, or reproductions of the Project Materials Order Form returned to plaintiff.  As for the materials returned to Cool Runnings by DRC, those materials (except for the Order Form itself), shall be placed in the possession of, and reviewed only by, plaintiff's counsel, maintained by plaintiff's counsel as highly confidential, and labeled as "Attorneys' Eyes Only."  This aspect of the preliminary injunctive relief granted by the court is also consistent with the stipulated protective order issued on August 6, 2021.  (Doc. No. 37.)  The

1     court believes that such an order sufficiently mitigates any potential risk to defendant DRC which

2     it has raised in connection with the pending motion.  The injunction issued by the court will

3     therefore not bar defendant's employees from continuing to work, nor will it mandate that

4     defendant do anything other than abide by the law.  In this way, and as recognized by other courts

5     as appropriate, "[b]y preventing [defendant] from using any [of plaintiff's] Trade Secrets

6     Information, a narrowly tailored injunction will merely prevent [defendant] from engaging in

7     unlawful acts, which it claims to be avoiding in any event." *Cutera, Inc.*, 444 F. Supp. 3d at

8     1209–10 (citing *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) ("When

9     deciding whether to issue a narrowly tailored injunction, district courts must assess the harm

10    pertaining to injunctive relief in the context of that narrow injunction.")).

11         Based upon the evidence presented in connection with the pending motion, the court

12    concludes that the risk of competitive harm to plaintiff from defendant DRC's use of the Cool

13    Runnings Project Materials Order Form outweighs any speculative risk to defendant from being

14    required to confirm that it has disgorged itself of plaintiff's trade secrets.

15         5.     <u>Defendant's Request for a Bond of Not Less Than $1.1 Million</u>

16         The court may issue a preliminary injunction only if the movant gives security in an

17    amount that the court considers proper to pay the costs and damages sustained by any party found

18    to have been wrongfully enjoined. Fed. R. Civ. P. 65(c).  The court may dispense with the filing

19    of a bond if "there is no realistic likelihood of harm to the defendant from enjoining his or her

20    conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

21         In its opposition to the pending motion, defendant DRC argues that the posting of a $1.1

22    million dollar bond is required because the requested injunction would "[disrupt] DRC's use of its

23    own internal information to pursue PriceSmart work, [restrict] its staff and contractors' ability to

24    pursue their chosen professions, and [permit] CRI unfettered access to DRC's information base."

25    (Doc. No. 39 at 30.)  As noted above, defendant DRC has not submitted any evidence

26    establishing that its fears in this regard are justified.  Indeed, the court has no reason to believe

27    that defendant would suffer any harm from the issuance of the narrow injunction granted by this

28    order.

1    As in *Cutera, Inc.*, however, "[t]he court in its discretion nonetheless sets an amount of

2    security, finding some amount is necessary to signal that [plaintiff] will be required to cover

3    [defendant's] costs if [defendant] is wrongfully enjoined." *Cutera, Inc.*, 444 F. Supp. 3d at 1211.

4    Because defendant DRC has provided no reason to require more, the court will set the bond

5    amount at $5,000. However, should the circumstances in this action change, for example should

6    defendant DRC establish that plaintiff has taken unfair advantage of its limited access to

7    defendant's documents, materials or information which constitute, contain, or summarize the

8    Cool Runnings Project Materials Order Form, defendant will be permitted to request the

9    imposition of a more significant bond. *See Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No.

10   11-cv-01539-MMM-JEM, 2013 WL 12244286, *2 (C.D. Cal. Feb. 19, 2013) ("The court's

11   authority to modify or dissolve a preliminary injunction in the face of changed law or

12   circumstances includes its ability to change the amount of bond that must be posted.") (citation

13   omitted).

14   **B.      Defendant's Motion to Dismiss**

15   Defendant DRC has also moved to dismiss three of plaintiff's claims brought against it.

16   (Doc. No. 31-1.) Specifically, defendant moves to dismiss plaintiff's second claim for conspiracy

17   to violate the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(b), plaintiff's fourth

18   claim for violation of the CUTSA, and plaintiff's fifth claim for violation of the DTSA. (*Id.*) For

19   the reasons articulated above in addressing plaintiff's motion for a preliminary injunction, the

20   court concludes that plaintiff has sufficiently alleged its fourth and fifth claims for violations of

21   the CUTSA and DTSA, respectively. Accordingly, below the court will address only the parties'

22   arguments with respect to whether plaintiff has sufficiently stated a cognizable claim against

23   defendant DRC for conspiracy to violate the CFAA.

24   Courts have required specific allegations of an agreement and common activities to state a

25   conspiracy claim under the CFAA. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816,

26   835 (N.D. Cal. 2014). "In the context of civil conspiracy, '[t]o survive a motion to dismiss,

27   plaintiff must allege with sufficient factual particularity that defendants reached some explicit or

28   /////

1    tacit understanding or agreement.'" *Id.* (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp.

2    1511, 1521 (N.D. Cal. 1990)).

3        In its pending motion to dismiss, defendant DRC argues that "no allegations of conspiracy

4    or an agreement reached by and between any of the defendants appear anywhere in CRI's

5    complaint." (*Id.* at 10.)  Defendant also contends that there is not one instance alleged where

6    defendant DRC committed an overt act or engaged in any wrongful act in relation to a conspiracy

7    to access plaintiff's computer network.  (*Id.*)  Defendant asserts that DRC did not exist at the time

8    defendant Gonzalez allegedly took the trade secret information from plaintiff, "and so there could

9    not have been any agreement to conspire with DRC."  (*Id.*)  Lastly, defendant DRC appears to

10   argue that all of plaintiff's claims brought under the CFAA are grounded in fraud and therefore

11   are subject to the heightened pleading standard under Rule 9.  (*Id.*)

12       In its opposition to defendant's motion to dismiss, plaintiff argues that Rule 9's

13   heightened pleading standard does not apply to CFAA claims "unless those claims are based on

14   allegations of fraudulent conduct."  (Doc. No. 38 at 14.)  Plaintiff asserts that "[w]rongful conduct

15   on the part of Defendant Gonzalez and Defendant DRC Contracting is alleged, but fraudulent

16   conduct is not, therefore Rule 9(b) does not apply to Cool Runnings' CFAA claim."  (*Id.* at 15.)

17   Moreover, plaintiff contends that the complaint provides specific examples of defendant

18   Gonzalez accessing plaintiff's computer without authorization after January 1, 2021, which is the

19   date that defendant DRC came into existence according to its Articles of Organization.  (*Id.*)

20   According to plaintiff, the complaint sets out the facts surrounding the April 8, 2021 email, which

21   allegedly shows that defendant Gonzalez "accessed the file and copied the [Project Materials

22   Order Form] for Defendant DRC Contracting's use and benefit in its business" and that defendant

23   DRC "did, in fact, use the information contained in the file to advance its business."  (*Id.* at 16.)

24   Plaintiff also avers that defendant Gonzalez was an agent of defendant DRC during some of the

25   alleged acts of unauthorized computer access.  (*Id.*)  This alleged agency relationship, plaintiff

26   contends, adequately sets forth a conspiracy claim under the CFAA.  (*Id.* at 17.)

27       In its reply, defendant DRC argues that Rule 9(b) applies "where there is a unified course

28   of fraudulent conduct as the basis of the claim."  (Doc. No. 42 at 5.)  According to defendant,

1   "[s]uch claims are said to be grounded in fraud or sound in fraud, and the pleading as a whole

2   must satisfy the particularity requirement."  (*Id.*)  Defendant concludes that the acts alleged here

3   are grounded in fraud.  (*Id.*)  Nonetheless, defendant contends that even if Rule 9(b)'s heightened

4   pleading standard does not apply here, "the Complaint fails to allege facts establishing DRC itself

5   accessed CRI's computer or network, reached an agreement, or directed another to gain access to

6   CRI's computer or computer network, or otherwise made any overt act in furtherance of an

7   agreement to access."  (*Id.* at 7.)  Lastly, defendant DRC asserts that any potential argument

8   suggesting that defendant Gonzalez was working as an agent of defendant DRC at the relevant

9   time is barred by the intra-corporate conspiracy doctrine.  (*Id.*)

10         Defendant DRC's arguments in this regard are persuasive under either pleading standard.

11   Accordingly, the court need not determine which standard applies.  Plaintiff does not allege any

12   affirmative or tacit understanding or agreement between defendant Gonzalez and defendant DRC.

13   Plaintiff's entire argument appears to hinge on the assertion that defendant Gonzalez was acting

14   as an agent of defendant DRC when he engaged in the unauthorized downloading of plaintiff's

15   files.  Defendant Gonzalez could not conspire with DRC before DRC was founded on January 1,

16   2021 and after January 1, 2021, defendant Gonzalez was a member-manager of DRC and

17   therefore its agent.  (Doc. No. 1 at 33.)  Given plaintiff's theory of liability, plaintiff's claim is

18   barred by the intra-corporate conspiracy doctrine, which provides that "concerted action by

19   officers within a single corporate entity cannot give rise to liability for conspiracy."  *Webb v.

20   Cnty. of El Dorado*, No. 2:15-cv-01189-KJM-EFB, 2016 WL 4001922, at *5 (E.D. Cal. July 25,

21   2016).  "The doctrine draws 'on a common sense insight that a person cannot conspire with

22   himself' and 'teaches that, since a corporation only acts through its officers, a group of corporate

23   officers acting within the scope of employment cannot create a conspiracy.'"  *Abu v. Dickson*, No.

24   20-10747, 2021 WL 1087442, at *11 (E.D. Mich. Mar. 22, 2021) (quoting *Bays v. Canty*, 330 F.

25   App'x 594 (6th Cir. 2009)).  "Aware of this possibility, courts have created a 'scope of

26   employment' exception that recognizes a distinction between collaborative acts done in pursuit of

27   an employer's business and private acts done by persons who happen to work at the same place."

28   *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1995).

1    Here, plaintiff plainly alleges that defendant Gonzalez violated the CFAA while serving as

2    an agent of defendant DRC for the purpose of benefitting defendant DRC.  (Doc. No. 1 at 14.)

3    Acknowledging defendant Gonzalez's role as a member-manager of DRC, plaintiff has likewise

4    alleged Gonzalez's actions were clearly in the scope of his employment in that they were intended

5    to benefit his employer.  Accordingly, plaintiff has not sufficiently alleged a conspiracy to violate

6    the CFAA against defendant DRC.  Therefore, the court will grant defendant DRC's motion to

7    dismiss plaintiff's second claim.[7]  Out of an abundance of caution, the court will grant plaintiff

8    leave to amend its complaint should it wish to do so.  However, plaintiff should only do so if it

9    can in good faith allege facts curing its dismissed second claim.

10   **CONCLUSION**

11   For the reasons set forth above,

12   1.    Plaintiff's motion for a preliminary injunction (Doc. No. 6) is granted as follows:

13        a.    Defendant DRC is enjoined and restrained from directly or indirectly

14              retaining, using, transmitting, disseminating, or disclosing the Cool

15              Runnings Project Materials Order Form, for the benefit of DRC or

16              otherwise;

17        b.    Defendant DRC is enjoined and restrained from using the Cool Runnings

18              Project Materials Order Form for the purpose of directly or indirectly

19              soliciting any Cool Runnings customers or potential customer;

20        c.    Defendant DRC is enjoined and restrained from using the Cool Runnings

21              Project Materials Order Form for the purpose of conducting business with

22              any Cool Runnings customers or potential customer;

23        d.    Defendant DRC shall, within five (5) days from the date of this order,

24              return to Cool Runnings (through plaintiff's counsel) all documents,

---

[7]  Plaintiff also asserts a sixth claim for "interlocutory and permanent injunction."  (Doc. No. 1 at 18.)  Defendant argues that injunctive relief is a remedy and not a cause of action and therefore this claim should be dismissed.  (Doc. No. 31-1 at 16.)  Plaintiff does not oppose defendant's motion to dismiss its sixth claim for interlocutory and permanent injunction; although it does not withdraw its request for injunctive relief.  (Doc. No. 38 at 25.)  Accordingly, the court will dismiss plaintiff's sixth claim without leave to amend.

1          materials or information which constitute, contain, or summarize the Cool

2          Runnings Project Materials Order Form;

3      e.    Defendant DRC must, within six (6) days from the date of this order, purge

4          or destroy any and all copies, recordings, electronic copies, or

5          reproductions of the above-mentioned Project Materials Order Form;

6      f.    Defendant DRC shall, within seven (7) days from the date of this order, file

7          with this court an affidavit signed under oath, setting forth in detail the

8          manner and form in which defendant DRC has complied with this order;

9      g.    All materials turned over by defendant DRC to plaintiff's counsel (with the

10         exception of the Order Form itself) shall be maintained by plaintiff's

11         counsel as highly confidential–Attorneys' Eyes Only;

12     h.    Defendant DRC shall not act in concert with any third-party to accomplish

13         what is otherwise prohibited by this court's order;

14     i.    Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, absent

15         subsequent waiver by the court, within ten (10) days from the date of this

16         order, plaintiff must post a $5,000 bond;

17     j.    This preliminary injunction is issued without prejudice to plaintiff or

18         defendant seeking additional discovery or seeking other equitable or legal

19         relief as appropriate; and

20     k.    This preliminary injunction shall become immediately effective and shall

21         remain in full force and effect through the date on which judgment, if any,

22         as to the enjoined defendant is entered in this matter; and

23   2.    Defendant DRC's motion to dismiss (Doc. No. 31) is granted in part as follows:

24     a.    Plaintiff's second claim for conspiracy to violate the CFAA is dismissed

25         with leave to amend;

26     b.    Plaintiff's sixth claim for interlocutory and permanent injunction is

27         dismissed without leave to amend;

28 /////

27

1              c.      Plaintiff shall file its amended complaint, if any, within thirty (30) days

2                    from the date of service of this order; and

3              d.      Defendant DRC's motion to dismiss (Doc. No. 31) is denied as to all other

4                    claims.

5   IT IS SO ORDERED.

6

7     Dated:   __**November 16, 2021**__                _____

                                          UNITED STATES DISTRICT JUDGE