UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COOL RUNNINGS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDRONICO ADAN GONZALEZ, ABIMAEL LUPIAN UTRERA, and DRC CONTRACTING, LLC, <br><br> Defendants. | Case No. 1:21-cv-00974-ADA-HBK <br><br> FINDINGS AND RECOMMENDATIONS TO DENY THE MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS ANDRONICO ADAN GONZALEZ AND ABIMEAL LUPIA UTRERA [1] <br><br> 14-DAY OBJECTION DEADLINE <br><br> (Doc. No. 51) |

Pending before the Court is a motion to dismiss for insufficient service, or alternatively motion to dismiss for lack of personal jurisdiction, filed on behalf of Defendants Andronico Adan Gonzalez and Abimael Lupian Utrera,[2] and attached exhibits filed on October 22, 2021. (Doc. Nos. 51, 51-1 through 51-5). Plaintiff Cool Runnings International, Inc. ("Cool Runnings") filed a response in opposition, along with a request for judicial notice consisting of D.R. Cline Enterprises, Inc.'s Statement of Information filed with the California Secretary of State on

---

[1] On October 28, 2022, the district judge referred the motion to dismiss to the assigned United States magistrate judge for review and preparation of findings and recommendations and/or other appropriate action. (Doc. No. 85).

[2] Defendant Jose Olivarez Lupian initially joined in the motion to dismiss. (Doc. No. 51). Plaintiff voluntarily dismissed Defendant Lupian. (Doc. Nos. 69, 71). Although Plaintiff refers to Defendant Abimael Lupian Utrera by the second surname "Lupian," for purposes of clarity the undersigned refers to all Defendants by their respective final surnames.

November 5, 2021.  (Doc. Nos. 65, 65-1)(citing Exhibit 1).  Defendants filed a Reply, attaching the declaration by Gonzalez, on January 11, 2022.  (Doc. Nos. 66, 66-1).  After obtaining leave, Plaintiff filed supplemental confidential documents under seal, including DRC Contracting's Articles of Organization, Operating Agreement and Statement of Information, and DRC Contracting's Application for Employer Identification Number on January 17, 2023.  (Doc. Nos. 87-90).  For the reasons discussed below, the undersigned RECOMMENDS the district court DENY Defendants' motion to dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Complaint

On June 18, 2021, Cool Runnings filed a Complaint alleging unauthorized access to its computer system and misappropriation of trade secrets against DRC Contracting, and three former employees of Cool Runnings, who are now employees of DRC Contracting: Andronico Adan Gonzalez ("Gonzalez"), Abimael Lupian Utrera ("Utrera'), and Jose Olivares Lupian ("Lupian").  (Doc. No. 1).  The gravamen of the Complaint is the alleged theft of Cool Runnings' trade secrets which allegedly provide Plaintiff with a competitive advantage in the international refrigeration and cold storage business.

In July 2018, Plaintiff had hired Defendant Gonzalez as a contract technical services engineer, where he was a member of a multidisciplinary team that provided information regarding specifications and functions of refrigeration systems, troubleshot equipment problems, and performed design calculations and engineering assignments.  (*Id.* at ¶¶ 34–35).  Defendant Gonzalez's position enabled him to obtain knowledge of Plaintiff's trade secrets, confidential information, goodwill, business relationships, business plans, and bid information with respect to past and future projects.  (*Id.* at ¶ 35).  Defendant Gonzalez was required to sign a nondisclosure agreement.  (*Id.* at ¶ 37).

In August 2016, Plaintiff hired Defendant Utrera to provide contract electrician services on Plaintiff's projects.  (*Id.* at ¶ 43.).   In August 2016, Plaintiff hired Lupian, who is now a non-party, to provide contract construction services on Plaintiff's projects as a carpentry journeyman.  (*Id.* at ¶ 45)(*see also* Doc. No. 71).

On December 23, 2020, both Defendant Gonzalez and Defendant Utrera resigned from Cool Runnings and began working with Defendant DRC, a newly formed refrigeration company. (*Id.* at ¶¶ 58–60). On December 24, 2020, Lupian similarly resigned from his position with Plaintiff and went to work for DRC. (*Id.* at ¶ 81). Despite having terminated his position as a contract technical services engineer for Plaintiff on December 23, 2020, Defendant Gonzalez did not immediately return his company-issued Microsoft Surface laptop. (*Id.* at ¶ 62). Defendant Gonzalez did not return the laptop until January 12, 2021, when he permitted Plaintiff's contractor in Guadalajara, Mexico to pick it up. (*Id.* at ¶ 67). Plaintiff hired a forensic expert to conduct a forensic analysis of Defendant Gonzalez's laptop, which showed that numerous Cool Runnings files had been copied from the laptop onto various external storage devices. (Doc. No. 6-1 at 13).

On January 1, 2021, Defendant DRC registered its formation as a limited liability company with the California Secretary of State. (Doc. No. 1 at ¶ 85). Defendant DRC listed its managers/members as: D.R. Cline Enterprises, Inc., Defendant Gonzalez, and Defendant Utrera. (*Id.* at ¶ 87). D.R. Cline Enterprises, Inc. is a California corporation owned and operated by Danny R. Cline, a former owner of an international refrigeration company. (*Id.* at ¶¶ 88–89).

In January and March 2021, Plaintiff submitted bid proposals to PriceSmart, Inc. ("PriceSmart")[3] for the installation and construction of refrigerated and cool storage areas for a new PriceSmart store in Bucaramanga, Colombia and design, installation, and construction of a produce distribution center at an existing PriceSmart facility in La Vega, Dominican Republic. (*Id.* at ¶¶ 95, 98). Defendant DRC also submitted bids for both projects and won both contracts. (*Id.* at ¶¶ 96-97, 99-100).

In April 2021, Plaintiff received an email to the Cool Runnings email address that was previously assigned to Defendant Gonzalez while he was a contractor for Plaintiff. (*Id.* at ¶ 102). The April email was sent from Lupian using his DRC email address to Defendant Utrera at his

---

[3] PriceSmart, owns and operates U.S.-style shopping warehouse clubs in Latin America and the Caribbean. (Doc. No. 1 at ¶ 91). PriceSmart is a substantial customer of Plaintiff, who has been PriceSmart's refrigeration contractor of choice for new PriceSmart club stores and major remodel projects for several years. (*Id.* at ¶¶ 92–94).

DRC email address and to Defendant Gonzalez at his former Cool Runnings email address apparently by mistake. (*Id.* at ¶ 103). A single file was attached to the email. (*Id.* at ¶ 104). The attached file was essentially a copy of Plaintiff's Project Materials Order Form, which Plaintiff alleges was previously copied by Defendant Gonzalez onto an external storage device from the aforementioned CRI Surface laptop. (*Id.* at ¶ 105). In the attached file, most references to Cool Runnings had been replaced with DRC, but some references to "CRI," "CRI Built," and "CRI Warehouse" remained designated as preferred vendors or manufacturers in the copied document. (*Id.* at ¶ 107). The substantive project materials information contained in the copied document, with few and minor changes, is a copy of Plaintiff's Project Material Order Form. (*Id.* at ¶ 110).

Based on these allegations, Plaintiff asserted that Defendants misappropriated Plaintiff's trade secrets and launched a competing refrigeration business, DRC, using Plaintiff's valuable confidential business information. (*Id.* at ¶ 111). Specifically, Plaintiff asserts the following five causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA") against Defendant Gonzalez; (2) conspiracy to violate the CFAA against Defendant DRC; (3) breach of contract against Defendant Gonzalez; (4) violation of the California Uniform Trade Secrets Act ("CUTSA") against Defendants Gonzalez, Utrera, and DRC; and (5) violation of the federal Defend Trade Secrets Act ("DTSA") against Defendants Gonzalez, Utrera, and DRC. (*Id.* at 13–18).

On November 16, 2021, the then assigned district judge granted in part Plaintiff's preliminary injunction enjoining Defendant DRC from using Plaintiff's trade secrets. (Doc. Nos. 6-1, 59 at 26-27). Plaintiff alleges that the misappropriation of its trade secrets has already caused, and will continue to cause, substantial harm to its competitive position in the Latin American refrigeration business market. (Doc. No. 1 at 14).

**B. Defendants' motion, Plaintiff's opposition, and Defendants' Reply**

In the motion to dismiss, the individual Defendants Gonzalez and Utrera raise two primary arguments: (1) service of process was improper and must be quashed; and (2) alternatively, the Court lacks personal jurisdiction over the individual Defendants, who are Mexican citizens and did not have sufficient contacts with California to be brought into federal

court in California.  (*See generally* Doc. No. 51).  In relevant part, Defendants attach declarations to support their motion to dismiss from Defendant Gonzalez (Doc. No. 51-2), Jose Olivarez (Doc. No. 51-4), and attorney Shane G. Smith with attachments numbered one through three including the text of Hague Service Convention on Signatories with list of Member States, and correspondence between defense counsel and Plaintiff's counsel concerning the service of process matter and other concerns (Doc. No. 51-5).

Defendants argue service of process was insufficient on Defendant Gonzalez and Utrera because Plaintiff attempted substitute service at Defendant DRC's address for the registered agent and not on the Defendants, who reside in Mexico, personally.  The parties' dispute centers on whether Plaintiff must have done requests for rogatory letters under the Hague Convention to serve the Defendants who are Mexican nationals in Mexico before attempting substitute service, or whether substitute service at the new employers' listed place of business in California for the individual Defendants, both of whom are listed as managers/officers for the new business, Defendant DRC Contracting, was sufficient.

## II.  LEGAL STANDARDS

### A.  Service of Process

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may challenge any departure from the proper procedure for serving the summons and complaint as "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  Service of process is a "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).  Once service of process is challenged, the plaintiff bears the burden of establishing that service was valid under Federal Rule of Civil Procedure 4.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)).  Courts may look outside the pleadings to resolve a Rule 12(b)(5) motion.  *McCarthy v. U.S.*, 850 F.2d 558, 562 (9th Cir. 1988)(other citations omitted).

Applicable here is Rule 4, which generally governs specifics of service of process.  More specifically, Rule 4(e), entitled "Serving an Individual Within a Judicial District of the United

States" provides:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Its counterpart, Rule 4(f), entitled "Serving an Individual in a Foreign Country provides:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the

court orders

Fed. R. Civ. P. 4(f).  Under Ninth Circuit law, Rule 4(f) is not triggered by the citizenship of the individual being served but rather the place in which service is effected.  *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) (finding Taiwan citizen was properly served under Rule 4(e)(2) in California, not agreeing with argument that he must be served under Rule 4(f) and not 4(e)(2)).

**B. Personal Jurisdiction**

Rule 12(b)(5) allows a party to move for dismissal based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Personal jurisdiction is an essential element of a court's jurisdiction, and, without it, a court is "powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999).  "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).  Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same.  *Id.* at 801.  Therefore, absent a traditional basis for personal jurisdiction (*i.e.*, physical presence, domicile, and consent), the Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiff, as the party seeking to invoke this Court's jurisdiction, bears the burden of showing that this Court has personal jurisdiction over Defendants.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)(citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  This *prima facie* showing is achieved by producing admissible evidence which, if believed, would sufficiently establish personal jurisdiction.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The court accepts uncontroverted facts in the complaint as true.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Jurisdictional facts, however, cannot be established by nonspecific, conclusory statements.  *Butcher's Union Local*

7

*No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)(although liberally construed, the complaint "must contain something more than mere conclusory statements that are unsupported by specific facts").

### III.  DISCUSSION

#### A.  Request for Judicial Notice

Plaintiff requests the Court to take judicial notice of a public filing on the California Secretary of State website of D.R. Cline Enterprises, as an entity owned by the individual Defendants' current employer, providing the Cline residence as the business address. (Doc. No. 65-1).

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may take judicial notice of a pertinent law or regulations at any stage of the proceedings. *Id.*; *see also National Agricultural Chemicals Assn. v. Rominger*, 500 F.Supp. 465, 472 (E.D. Cal. 1980).  The Court may take judicial notice on its own or at the request of any party. Fed. R. Evid. 201(c).

Because the Court may take judicial notice of a filing available on the state's public website, Plaintiff's request is granted.  The Court takes judicial notice of the State of Information filed with the California Secretary of State for D.R. Cline Enterprises, the entity that own 41% of Defendant DRC Contracting, and its "business address" of record: 19325 Jesus Maria Rd., Mokelumne Hill, California 95252.  This address is where Plaintiff attempted service, ultimately by substitute service, on Defendants Gonzalez and Utrera.

#### B.  Substitute Service on Gonzalez and Utrera Under California Law was Effective

Defendants Gonzalez and Utrera first argue they were not properly served by substitute service because personal service was not attempted in Mexico, Colombia, or the Dominican Republic under Rule 4(f), considering Defendants reside in Mexico and recently worked in the other aforementioned foreign countries. (Doc. No. 51-1 at 7).  Alternatively, Defendants argue that even if Plaintiff used reasonable diligence to overcome personal service and substitute

8

1  service was permitted under California law, substitute service was improper because the address
2  was not Defendants Gonzalez and Utrera's "usual place of business" as required under California
3  Code Civil Procedure section 415.20(b) because they "do not maintain an office there, nor
4  conduct any business there"; and "only worked at DRC's jobsites overseas." (*Id.* at 8).

5        Plaintiff argues it used "reasonable diligence" in attempting to personally serve
6  Defendants before resorting to substitute service, referring to the summons on the docket
7  reflecting numerous personal service attempts. (Doc. No. 65 at 9, 14)(citing Doc. Nos. 45, 46,
8  47). Plaintiff first afforded Defendants an opportunity to waive personal service to no avail.
9  (Doc. No. 65 at 9). Following no return of waiver forms, Plaintiff attempted to personally serve
10 Defendant Gonzalez at his wife's address in Texas, but the process server was told "Gonzalez
11 does not reside at the Texas address, although he does use it as a mailing address." (*Id.*). Plaintiff
12 then attempted to personally serve both Defendants at the DRC Business Location. (*Id.*). The
13 process server made no less than four attempts, and on the fourth attempt Dan Cline said
14 Gonzalez and Uterra do "not live or work there. This is Dan's residence." (*Id.*).

15       Based on the foregoing circumstances, Plaintiff instructed the process server to utilize
16 substitute service, leaving copies of the documents with Dan Cline at the DRC Business Location,
17 considering: (1) the individual Defendant's ownership interest in DRC Contracting; (2) the
18 individual Defendant's representations to the California Secretary of State that the DRC Business
19 location is their business address; and (3) Gonzalez's statement to Mr. Guitierrez that the
20 individual Defendants had been in the United States working on a materials list for Defendant
21 DRC at the time that Defendant DRC had been served. (*Id.* at 9-10). Plaintiff asserts after not
22 successfully personally serving Defendants, substitute service is proper at a person's "usual place
23 of business." (*Id.* at 12-13). Recognizing "usual place of business" is not defined in Cal. Code
24 Civ. Proc. 415.20(b), Plaintiff points to the judicial comment to the rule, which provides "[t]he
25 term 'usual place of business' includes a defendant's customary place of employment as well as
26 his own business enterprise.'" (*Id.* at 13) (citing *Coomes v. Shamji*, F. App'x 988, 988 (9th Cir.
27 2007) (unpublished) (finding that defendant's business enterprise was his "usual place of
28 business" for purpose of Cal. Civ. Proc. Code § 415.20(b)).

9

The Court agrees with Plaintiff. Significant here is that citizenship does not dictate mode of service. In other words, the undersigned is not persuaded by Defendants' argument that Plaintiff must serve defendants solely under Rule 4(f) because they reside in Mexico or are Mexican citizens. *Stars' Desert Inn Hotel & Country Club, Inc*, 105 F.3d at 524 (9th Cir. 1997). Instead, alternatively service may be completed under Rule 4(e), which incorporates state law. Rule 4(e)(1) provides an individual may be served by "following state law for serving a summons in an action brought in the courts of general jurisdiction in a state where the district court is located or where service is made." Plaintiff followed California substitute service law after attempting personal service. The law permits substitute service on a defendant if the plaintiff, acting with reasonable diligence, cannot serve process by ordinary methods. Cal. Code. Civ. P. 415.20(b). The statute provides:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . .a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, *usual place of business*, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household *a person apparently in charge* of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

*Id.* (emphasis added). California substitute service is to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant. *Long v. Mcafee*, No. 1:19-cv-00898-DAD-SAB, 2019 WL 5536228 *2 (E.D. Cal. Oct. 25, 2019); *Team Enterprises, LLC v. Western Inv. Real Estate Trust*, No. 08-1050-LJO-SMS, 2008 WL 4367560 *2-*3 (E.D. Cal. Sept. 23, 2008)(noting as long as the defendant receives actual notice of the lawsuit, substantial compliance with the Code provisions governing service of summons will generally be held sufficient)(other citations omitted).

**1. Plaintiff Exercised "Reasonable Diligence"**

Plaintiff reviews the multiple attempts to personally serve Defendants in its opposition to the motion to dismiss. Defendants Gonzalez and Utrera are citizens of Mexico but are

managers/members of Defendant DRC Contracting located in California (specifically within the Fresno Division off this Court). (Doc. No. 1 at ¶¶7-8, 15-16). Plaintiff attempted to personally serve Gonzalez and Uterra at the business address of record on five occasions, four of which were during regular business hours. (*See* Doc. Nos. 45, 47). Courts have found two or three attempts at personal service at a proper place fully satisfies the requirement of reasonable diligence and allows substitute service to be made. *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 613 (C.D. Cal. Dec. 14, 1995)(citations omitted); *see also Acosta v. Martinez*, No. 1:19-cv-00307-AWI-EPG, 2020 WL 1026890 (E.D. Cal. March 3, 2020)(recognizing effective substitute service after process server attempted personal service twice). Because Plaintiff attempted personal service on the Defendants no less than four times, including an attempt at Gonzalez's wife's address in Texas to no avail, the Court finds it was reasonable to utilize substitute service of process.

**2. Gonzalez and Uterra Have a "Usual Place of Business" Under § 415.20(b)**

As noted above, "usual place of business" is not defined in Cal. Code Civ. Proc. 415.20(b). The judicial comment to the rule provides "[t]he term 'usual place of business' includes a defendant's customary place of employment as well as his own business enterprise.'" (*Id.* at 13)(citing *Coomes v. Shamji*, F. App'x 988, 988 (9th Cir. 2007)(unpublished) (finding that defendant's business enterprise was his "usual place of business for purpose of Cal. Civ. Proc. Code § 415.20(b)).

On January 1, 2021, Defendant DRC registered its formation as a limited liability company with the California Secretary of State. (Doc. No. 1 at ¶ 85). Defendant DRC's managers are listed as D.R. Cline Enterprises, Inc., Defendant Gonzalez, and Defendant Utrera. (*Id.* at ¶ 87). D.R. Cline Enterprises, Inc. is a California corporation owned and operated by Danny R. Cline, a former owner of an international refrigeration company. (*Id.* at ¶¶ 88–89). Gonzalez and Utrera acknowledged they worked in the United States for DRC Contracting. (Doc. Nos. 51-3, 51-4)(stating "[i]t has been months since I traveled to [the business address of record].")). Further, the very facts of this case concern alleged theft of business information from Cool Runnings to the advantage of Defendants' new business enterprise, DRC Contracting.

11

Substitute service at the business address for DRC Contracting, or D.R. Cline Enterprises, with manager Danny Cline is sufficient considering these facts under the applicable rules. *Wright v. Ferry*, No. 17-cv-1996-BAS-NLS, 2018 WL 1898913 * 4 (S.D. Cal. April 20, 2018)(finding substitute service proper on defendant, who resided in Mexico and dual citizen of France and Mexico, at business headquarters where defendant was an owner and corporate officer was proper).

The cases Defendants rely upon to support their argument to quash service are factually distinguishable, particularly where Defendants are named as owners and corporate officers of the California corporation. Defendants first cite to *Wai v. Zhu*, No. 2021 WL 214207 (N.D. Cal. Jan. 21, 2021), but *Wai* involved a Chinese citizen whose wife received service of process at a home they owned in California. The issue in *Wai* concerned whether the house was his "usual place of abode," unlike the instant case where substitute service was made at the business address of record for Defendants. Defendants also cite to *Environmental Furniture Inc. v. Bina*, 2010 WL 11549403 *2 (C.D. Cal. Aug. 10, 2010). Unlike the instant case, the plaintiff in *Environmental Furniture* argued substitute service could not be attempted without first taking reasonable efforts to personally serve the defendant. The court found substitute service was improper because plaintiff failed to demonstrate reasonable efforts to personally serve before utilizing substitute service. (*Id.* at *2). While the court further considered the fact that the defendant, an Italian citizen, claimed his usual place of business was in Italy because he had only traveled to the Environmental Furniture office less than 14 days a year and therefore the address used for substitute service was not his usual place of business, the plaintiff in that case did not dispute either contention. Here, Plaintiff asserts reasonable efforts to personally serve Defendants and further argues DRC Contracting's business address of record is Defendants' usual place of business to effectuate substitute service. Defendants cite to California appellate cases, not federal precedent, to support quashing service, but neither case recognizes or analyzes the Judicial Comments to § 415.20(b) or caselaw construing "usual place of business."

**3. Personal Jurisdiction is established**

Defendants Gonzalez and Utrera argue the Court lacks personal jurisdiction and therefore

1  the complaint must be dismissed as to the individual, non-resident Defendants in this case. (Doc.
2  No. 51-1 at 10). Defendants also raise the fiduciary shield doctrine asserting each Defendants'
3  respective contacts with the forum State must be assessed individually for personal jurisdiction.
4  (*Id.* at 11). Mere association with the company is insufficient. (*Id.*).

5  Plaintiff opposes and in summary asserts this Court has jurisdiction under the long-arm
6  statute due to the Defendants' respective purposefully directed activities in stealing Cool
7  Runnings' business information to the benefit of their newly formed business, DRC Contracting,
8  a company organized under California law. Plaintiff further argues the fiduciary shield doctrine
9  is inapplicable here considering the entire course of the business dealing and the fact the
10  Defendants chose to form a new business in California, in which they are co-owners. (*Id*. at 18-
11  19). Finally, in the event the Court finds Plaintiff did not make prima face case of jurisdiction,
12  Plaintiff requests limited jurisdictional discovery. (*Id.* at 21).

13  **1. Specific Jurisdiction is established**

14  Absent a defendant's contacts with a forum that are substantial, continuous, and
15  systematic that the defendant can be deemed to be present in that forum for all purposes, a forum
16  may exercise only specific jurisdiction. *Yahoo! Inc. v. LA Ligue Contre Le Racisme Et*
17  *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

18  The Ninth Circuit employs a three-part test to determine whether a defendant's contacts
19  with the forum state are sufficient to subject him to specific jurisdiction. *Ballard v. Savage*, 65
20  F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists if: (1)
21  the out-of-state defendant purposefully availed him or herself of the privilege of conducting
22  activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the
23  cause of action arose out of the defendant's forum-related activities; and (3) the exercise of
24  jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).
25  The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test.
26  *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two
27  prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of
28  jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 476–78 (1985)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

### a. Purposefully Availed Verses Purposefully Directed

Under the first prong, a plaintiff must establish that the defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. As the Ninth Circuit explained in *Sinatra*:

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)(citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (citations and internal quotations omitted). To determine whether the defendant "purposefully established minimum contacts within the forum," courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort. *Picot*, 780 F.3d at 1212. Cases do not impose a rigid dividing line between these two types of claims. When both contract and tort claims are at issue, both tests are relevant. *See Picot*, 780 F.3d at 1212. Key under either analysis is whether defendants have voluntarily derived some benefit from their interstate activities such that they "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 474-75 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984)).

As noted by Plaintiff, Defendants Gonzalez and Uterra utilize a different concept,

1  "purposefully directed" as it pertains to tort claims, to argue they didn't purposefully direct any
2  alleged tortious acts to California.  (Doc. No. 51-1 at 12).  Citing a three-prong test for purposeful
3  direction coined "the *Calder*-effects test," Defendants assume *arguendo* that individuals
4  intentionally committed the acts in the complaint but argue nothing in the record shows those acts
5  were expressly aimed at California and likely to cause harm in California.  (*Id.* at 13)(citing *Fiore*
6  *v. Walden*, 657 F.3d 838, 848 (9th Cir. 2011).  Specific to Defendant Gonzalez and the non-
7  disclosure agreement he signed with Plaintiff at issue in the breach of contract claim under count
8  2, Defendant asserts the Complaint fails to allege sufficient personal jurisdiction because breach
9  of the non-disclosure agreement does not amount to "business activities" in California.  (Doc. No.
10 51-1 at 14).

11          The Court is not persuaded by Defendants' argument.  Interpreting factual disputes in
12 favor of Plaintiff, the Court finds Plaintiff's company once employed Defendants, Defendants
13 took affirmative steps to use alleged proprietary information which they learned during their
14 employment with Plaintiff to form a new competing business, which business is also located and
15 incorporated in California.  A key question is whether the "defendant's conduct and connection
16 with the forum state are such that he should reasonably anticipate being haled into court there."
17 Significantly, co-defendant DRC contracting is incorporated as a California business entity and
18 the articles of incorporation specially reference California law.  The individual Defendants,
19 although residing in Mexico, are officers of this California-based entity.  Defendants occasionally
20 traveled to California for business.  Defendants have purposefully availed themselves of doing
21 business in California with a California entity.  Defendants used information acquired during their
22 employment with Plaintiff for the benefit of Defendant DRC Contracting, including use of an
23 ordering form, which still had Plaintiff's name on it, to enter into contracts with companies
24 needing commercial refrigeration located throughout the world.  Specific to Defendant Gonzalez
25 and the breach of the nondisclosure agreement, the claim is directly connected to trade secret
26 misappropriation in California.  Further, one of the companies Defendant DRC bid on to the
27 disadvantage of Plaintiff was PriceSmart, a California company.  Considering the scope of the
28 business, and the business reality, the logical forum to sue Defendants in is California, where the

entity that derived the benefit of Plaintiff's business information is incorporated and located.

### b. Arising Out of or Related to Forum-Related Activities

The second prong requires a plaintiff's claim arise out of, or relate to, defendant's forum-related activities. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). Courts use the traditional "but for" causation analysis—i.e. the plaintiff must show that the claim would not have arisen "but for" the defendant's conduct directed at the forum state.

Defendants again argue that no individual Defendant purposefully directed his business activities to California nor purposefully availed himself of California's laws and benefits in relation to Plaintiff's claims. Plaintiff opposes, pointing to *Menkin v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) arguing "[a] 'single forum contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state.'" Plaintiff points to the facts alleged in the Complaint that the individual Defendants misappropriated Plaintiff's trade secrets and used those trade secrets in Defendant DRC's operations in California. Further, Plaintiff points to Defendant Gonzalez's access to Plaintiff's computer system without authorization to steal Plaintiff's trade secrets in violation of the non-disclosure agreement.

The Court agrees with Plaintiff that there are sufficient facts alleged in the Complaint showing purposeful direction of the individual Defendants' activities in misappropriating information from their former employer, Plaintiff, to the benefit of their new California-based employer DRC.

### c. Reasonableness

Having found Plaintiff satisfied the first two prongs of the specific jurisdiction test, the burden shifts to Defendants to present a "compelling case" that the exercise of jurisdiction would be unreasonable. In determining whether jurisdiction is reasonable, courts consider the following seven factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See*

*CollegeSource*, 653 F.3d at 1079 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) ). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). The Court considers each factor in turn.

The Ninth Circuit has determined that the first prong parallels the specific jurisdiction analysis. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993). Because the undersigned finds Defendants availed themselves of benefits of California, the Court further finds Defendants interjected themselves in California to satisfy the first prong of the reasonableness test.

The second factor considering the burden on the Defendants weighs in favor of Plaintiff. Although Defendants are citizens of Mexico, the cost argument is unavailing considering they chose to incorporate in California and acknowledge travelling all over the world, including to California for business related activities.

The third factor, extent of conflict with the sovereignty of the Defendants' state, likewise does not weigh in favor of Defendants. Defendants cite *Pacific Atlantic Trading Co. Inc. v. M/V Main Exp.* involving defendants located in *Malaysia* in support of their position. The facts in *Pacific Atlantic Trading Co.* are distinguishable, however, to the extent the court noted the contract at issue was executed in Malaysia, by Malaysian citizens, supplied by a Malaysian bank. Here, Plaintiff's company is incorporated in Georgia, but Defendants, who are Mexican citizens, are officers of a California-based company and bid against Plaintiff on a job with another California company (PriceSmart). Nor has Mexico voiced a sovereign objection in this case.

The fourth, fifth, and sixth factors, the forum state's interest, efficient judicial resolution, and Plaintiff's interest in a convenient forum, all likewise weigh in favor of Plaintiff's choice of forum in California because both Defendant DRC and Price Smart are located in California. The seventh factor, the existence of an alternative forum, is not at issue until the forum state is shown to be unreasonable. *CollegeSource*, 653 F.3d at 1080 (quoting *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929, n. 19 (9th Cir. 2011). Neither have Defendants shown California is an unreasonable forum, nor do Defendants present an alternative forum.

Considering all relevant factors, Defendants have not presented a compelling case that the

exercise of jurisdiction in California is unreasonable. Plaintiff has made a prima facie case showing that the individual Defendants, who are officers of a California-based company, stole information from their former employer to the benefit of the California-based company, and these activities form the basis of the litigation. Thus, Defendants are subject to the specific jurisdiction in California.

**2. Defendants are not Protected by Fiduciary Shield Doctrine**

Defendants assert under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. (Doc. No. 51-1 at 11)(citing *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)).

The Court is not persuaded by Defendants' argument. Here, according to the facts alleged in the Complaint and noted in granting in part Plaintiff's motion for a preliminary injunction, Defendants Gonzalez and Utrera were not just merely associated with DRC Contracting. Instead, they actively participated in taking business information from Cool Runnings to use to form the new entity, Defendant DRC Contracting, and steal business from Plaintiff. Thus, Defendants may not claim the protection of the fiduciary shield doctrine to preclude the exercise of jurisdiction over them. *See also Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11–5764–RSWL, 2011 WL 4480639 at *5 (C.D. Cal. Sept. 26, 2011)**.**

Accordingly, it is **ORDERED**:

Plaintiff's request for judicial notice is GRANTED

It is further **RECOMMENDED**:

The Individual Defendants' motion to quash service or dismiss for lack of jurisdiction filed on behalf of Defendants Andronico Adan Gonzalez and Abimael Lupian Utrera (Doc. No. 51) be DENIED.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written

objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   February 20, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE